221 F.2d 886
 The TRAVELERS INSURANCE COMPANY, Appellant,
v.
P. J. DONOVAN, Deputy Commissioner, United States Department of Labor, Bureau of Employees' Compensation, District of Columbia Workmen's Compensation Act, Appellee.
 No. 12502.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 24, 1955.
 Decided April 21, 1955.
 
 Mr. Ernest A. Swingle, Washington, D. C., with whom Messrs. Edwin A. Swingle and Allan C. Swingle, Washington, D. C., were on the brief, for appellant.
 Mr. Ward E. Boote, Asst. Sol., U. S. Dept. of Labor, with whom Messrs. Leo A. Rover, U. S. Atty., and Lewis Carroll, Asst. U. S. Atty., were on the brief, for appellee.
 Before PRETTYMAN, BAZELON and WASHINGTON, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 This is a case arising under the Workmen's Compensation statute.[1] It involves a claim by an employee who acquired a contagious disease while on an assignment overseas. The Deputy Commissioner found for the claimant, and the insurance carrier sought judicial review. The District Court held for the claimant, 125 F.Supp. 261, and this appeal followed.
 
 
 2
 The findings of the Deputy Commissioner, so far as pertinent here, were as follows:
 
 
 3
 "That beginning in October 1950, the claimant above named [Dorothy Myers Duty] was in the employ of the employer above named [the American National Red Cross], whose address is Seventeenth and D Streets, Northwest, Washington, District of Columbia; * * * that the business of the employer was to provide emergency relief in the United States and abroad in times of disaster and to provide certain similar services to personnel of the armed forces of the United States throughout the world; that the employment of the claimant by the employer was as a clerk-stenographer; that on October 28, 1950, the claimant submitted to chest x-ray prior to her assignment to overseas duty, and no evidence of tuberculosis was found; that shortly thereafter the claimant was assigned to duty overseas and arrived in Japan on January 26, 1951, and was assigned to duty at the United States Army Base at Kyoto, Japan; that her duties, while stationed at Kyoto were those of a clerk-stenographer and also involved interviewing Japanese war brides of American service personnel; that while in Japan the claimant lived in quarters furnished by the United States Army; that the claimant had occasional contacts with the Japanese people; that the incidence rate of tuberculosis in Kyoto, Japan, for the year 1951 was 1040 per 100,000 population and for the year 1952 the rate was 1090 per 100,000 population; that the incidence rate of tuberculosis in the District of Columbia for the year 1951 was 220.9 per 100,000 population and for the year 1952 the rate was 215.7 for 100,000 population; that the death rate from tuberculosis in Kyoto, Japan, for the year 1951 was 142 per 100,000 population, and for the year 1952 the rate was 104.9 per 100,000 population; that the death rate from tuberculosis in the District of Columbia for the year 1951 was 35.5 per 100,000 population, and for the year 1952 the rate was 28.1 per 100,000 population; that during the winter of 1951-1952 the claimant developed a persistent cough and suffered chest pains; that in March 1952, the claimant was examined at a United States Army hospital at Kyoto, Japan, and was informed that she was suffering from bronchitis; that no x-rays were taken at that time; that on July 8, 1952, the claimant returned to the same hospital, where further examination, including x-rays, showed her to be suffering from left lung cavitation, tubercular, moderately advanced; that the claimant was then transferred to the United States Army Hospital at Osaka, Japan, and from there to Fitzsimons Army Hospital at Denver, Colorado, where she arrived on August 14, 1952; that the claimant submitted to surgery at Fitzsimons Army Hospital for removal of the infected areas of the left lung and she continues to be a patient there; that the claimant in her contacts with the Japanese people was subjected to the greater incidence of tuberculosis, as found above, and contracted tuberculosis as a result of such contacts; that the injury arose out of and in the course of the employment."
 
 
 4
 These findings were based on a written stipulation entered into between the claimant and the carrier.[2] No hearing was requested or held. On appeal, the carrier contends that the award is void because it is "based on speculation and conjecture and is not substantiated by the facts." It says that "the sole fact of a slightly higher incidence of tuberculosis in Japan than that in the District of Columbia" cannot support "an inference by the Deputy Commissioner that the employee sustained such an occupational disease or infection as arose naturally out of her employment in Japan."
 
 
 5
 The statute creates a presumption, for the benefit of the claimant, that "the claim comes within the provisions of this Act."[3] Accordingly, absent substantial evidence to the contrary, a disability occurring in the course of employment "must be presumed to have arisen therefrom." Robinson v. Bradshaw, 1953, 92 U.S.App.D.C. 216, 220, 206 F.2d 435, 439. And see O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. Here it is clear that the disability did occur in the course of employment: "* * * the decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils." Cardozo, J., in Marks' Dependents v. Gray, 1929, 251 N.Y. 90, 167 N.E. 181, 182, quoted and followed in Lepow v. Lepow Knitting Mills, 1942, 288 N.Y. 377, 43 N.E.2d 450.
 
 
 6
 The carrier has brought forward no substantial evidence opposed to the presumption, along the lines of which we spoke in Robinson. On the contrary, the agreed statement shows that the risk of contracting tuberculosis in Japan was some five times greater than in the District of Columbia. It is conceivable that the incidence of the disease in both places was so minimal as to require the conclusion that the five-fold ratio was itself de minimis. But the carrier offered no proof to that effect, and we certainly cannot derive any such conclusion from our own inspection of the record.
 
 
 7
 The employee did not, the record shows, suffer from the disease prior to her transfer to Japan. It is entirely reasonable to infer, under all the circumstances, that she contracted the disease by her contacts with the population of that country, infected as it was to a higher degree than that of the District of Columbia. See McAllister v. United States, 1954, 348 U.S. 19, 22, 75 S.Ct. 6.[4]
 
 
 8
 For these reasons, the judgment of the District Court will be
 
 
 9
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 D.C.Code § 36-501 et seq., 1951; 33 U.S.C.A. § 901 et seq
 
 
 [2]
 The stipulation included a statement that "the diseases of bronchitis and tuberculosis are not endemic or peculiar to any certain people, race, community or occupation." The Deputy Commissioner made no finding of that sort. We do not think he was required to do so or that such a finding would have affected the result. The stipulation did not include the final conclusions quoted above, namely, "that the claimant in her contacts with the Japanese people was subjected to the greater incidence of tuberculosis, as found above, and contracted tuberculosis as a result of such contacts; that the injury arose out of and in the course of employment." Otherwise, the findings and stipulation were nearly identical in terms
 
 
 [3]
 Section 20(a), Longshoremen's and Harbor Workers' Compensation Act, supra, n. 1
 
 
 [4]
 See Larson, Workmen's Compensation Law, Vol. 1, Sec. 8; Lepow v. Lepow Knitting Mills, supra; Pacific Employers Ins. Co. v. Industrial Accident Commission, 1942, 19 Cal.2d 622, 122 P.2d 570, 141 A.L.R. 798; City of San Francisco v. Industrial Accident Commission, 1920, 183 Cal. 273, 191 P. 26