**SMITH, HINCHMAN & GRYLLS ASSOCIATES, INCORPORATED, a corporation, and Royal Indemnity Company, a corporations, Plaintiffs,**

v.

**William M. O'KEEFFE, Deputy Commissioner U. S. Bureau of Employees' Compensation for the Sixth Compensation District, Defendant.**

Civ. No. 4330.

United States District Court
M. D. Florida,
Tampa Division.

Jan. 23, 1963.

Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for plaintiffs.

Joe H. Mount, Asst. U. S. Atty., Edward F. Boardman's Office, U. S. Atty., Tampa, Fla., for defendant.

YOUNG, District Judge.

Plaintiffs brought this action under the provisions of the Longshoremen's and Harbor Workers' Compensation Act (Title 33 United States Code § 921)

(hereinafter sometimes referred to as the "Act") for a review of an Order entered by the Defendant on January 25, 1962. The Order awarded compensation benefits to Claimants Agnes E. Ecker and Barbara Ecker, wife and daughter respectively of Robert C. Ecker, Deceased. The Findings of Fact set forth in the Compensation Order are as follows:

### "FINDINGS OF FACT

"That on the 28th day of May, 1960, the decedent above named (Robert C. Ecker) was in the employ of the employer above named (Smith, Hinchman & Grylls Associates, Incorporated), a contractor with the United States at Korea, in the Pacific Compensation District, established under the provisions of the Defense Bases Compensation Act, (Public Law 208–77th Congress as amended), and that the liability of the employer for compensation under the said Act was insured by Royal Indemnity Insurance Company; that the case was transferred to the Sixth Compensation District in accordance with Section 19(g) of the said Act with the permission of the Bureau of Employees' Compensation; that on the said day the decedent herein sustained personal injury resulting in his death when, seeking reasonable recreation and entertainment the decedent journeyed to Chunpyung Lake, Chunpyung, Korea, and proceeded to help a friend transport sand across the above lake for a personal purpose, and that while traveling across the above lake in a 12 foot boat the boat sank and the decedent fell into the above lake and drowned; that the employer paid the decedent full wages for the day of the accident; that the decedent worked on a 365 day a year basis; that the decedent was paid wages on a basis of a 365 day a year work schedule; that the decedent was subject to call to work at all times; that the employer did not provide the decedent or his co-employees at that work site with

recreation; that on the day of the accident the decedent was not performing direct service for the employer but was on call and was paid full wages for that day; that the conditions of the employment created a zone where he had to seek recreation under exacting and unconventional conditions; that the accident and the subsequent death of the decedent arose out of and in the course of employment; that at the time of the fatal accident the decedent's average weekly wage amounted to more than $81.00; that the claimant, Agnes E. Ecker, who was born on April 27, 1911, and married to the decedent on June 18, 1938, is the surviving widow of the decedent and is entitled to death benefits for herself at $28.35 per week, (35% of the maximum average weekly wage of $81.00); that Barbara Ecker, who was born on September 10, 1948, is the surviving child of the decedent, and that Agnes E. Ecker, mother and natural guardian of the child, is entitled to death benefits for the support of the said child at $12.15 per week, (15% of the maximum average weekly wage of $81.00); that the funeral expenses of the decedent amounted to $562.60 and that Agnes E. Ecker paid this amount to the funeral director; that Agnes E. Ecker is entitled to $400.00 reimbursement for such above expense; that the accrued death benefits to which Agnes E. Ecker is entitled for herself and for the support of the child, Barbara Ecker, from May 29, 1960 to January 25, 1962, inclusive, (86 5/7th weeks at $28.35 per week plus 86 5/7th weeks at $12.15 per week), amount to $3,511.93; that the employer and the insurance carrier have paid nothing to the claimants as compensation."

In the proceeding before the Deputy Commissioner, the parties entered into a Stipulation, portions of which follow:

"1. It is stipulated that the deceased employee, at the time of his death, on or about May 28, 1960, was employed by the said employer as Assistant to the Administrative Officer, at wages in excess of $81.00 per week.

"2. It is stipulated that on Saturday, May 28, 1960, at approximately 3:30 p. m. in the afternoon, the deceased employee met his death by drowning at Chunpyung Lake, Chunpyung, Korea, when the boat in which the deceased employee and two companions were hauling a load of sand across the lake to be used to build up the beach in front of the lakeside lodge occupied by the deceased's companions, capsized, and the deceased employee and one of the companions were unable to reach shore.

"3. It is stipulated that the two companions were not employees of this employer.

\* \* \* \* \* \*

"5. It is admitted that the sand was being transported across the lake for the use at the lodge of the deceased employee's companion, Mr. Richard H. MacFadden, and was in no way authorized or with the knowledge of the employer. That the boat was owned by Mr. MacFadden and not furnished by the employer. That the trip on the lake was made without the knowledge of the employer.

"6. It is stipulated that at the time of his death, the deceased employee was not engaged in his usual occupation. That the deceased employee at the time of his death was on his Memorial Day weekend and engaged in recreational activities on Chunpyung Lake, which is under the control of the Korean Government. That the lake is 30 miles east of Seoul, Korea, which is the job site of the employer of the deceased employee. That the deceased employee's duties for the employer were restricted to Seoul only, and that the deceased was given specific assignments in an administrative field in

his capacity as Assistant to the Administrative Officer, and was responsible for personnel in the stenographic and clerical departments, including purchasing, filing, and liaison with certain United States overseas mission offices.

"7. It is admitted that such activity namely: boatriding and sand hauling were not part of the employment contract or duties of deceased employee's job. That the recreation facilities being used by the deceased employee were not furnished by the employer or by the United States Government or supervised or inspected in any way by the employer or the United States Government. That neither the employer, nor the United States Government encouraged or forbade the use of such recreational facilities. That the deceased employee obtained transportation to the recreation area in a jeep owned by the deceased employee's companion, Richard H. MacFadden, and that the employer did not furnish or pay for such transportation in any way whatsoever.

"8. It is stipulated that the recreational activities the deceased employee was engaged in at the time of his death were not forbidden by the employer or in violation of any work rule, safety rule, or any condition of employment of the employer. That the employer knew the employees were accustomed to traveling far from the job site for weekends, holidays and recreation activities.

"9. It is stipulated that the employer did not supervise or regulate such trips. That such trips were not in violation of any instructions of the employer.

"10. It is stipulated that the deceased employee was to remain in Korea for two years by his employment contract. That by the terms of such contract, the deceased employee usually worked a forty-hour week with Saturdays and Sundays and Holidays off, however, the said employee quite often worked Saturdays and Sundays, and that all employees worked on a 365 day per year basis when outside of the United States. That the deceased employee was subject to call to the job site at any time, but usually spent only eight hours a day on the job site.

"11. It is stipulated that the deceased employee did not live at the job site or on a defense base, but received an allowance to live on the Korean economy at Seoul, Korea.

"12. It is stipulated that the claimant, Mrs. Agnes Ecker, age 50, was born on April 27, 1911, and was the wife of the deceased employee, and as such was completely dependent on the deceased employee at the time of his death. That there is one minor child, a daughter, Barbara Ecker, age 13, born on September 10, 1948, of the marriage of the deceased employee and claimant, and said minor child was dependent on deceased at the time of his death."

From these facts the Deputy Commissioner found that the accident causing Ecker's death arose out of and in the course of his employment. There is no factual dispute in this case and the sole question now before this Court is one of law as to whether or not Ecker's death arose out of and in the course of his employment.

The cases have established the rule, applicable to the facts of this case, that if the obligations or conditions of employment created the zone of danger out of which the injury arose, then such injury is said to have arisen out of and in the course of employment. In Turner v. Willard, 154 F.Supp. 352 (S.D.N.Y. 1956) it was said:

"The statute creates a presumption that a claim filed under it comes within the provision of the Act un-

less there is 'substantial evidence to the contrary.' Title 33 U.S.C.A. § 920. The statute creates this presumption for the benefit of the claimant. Accordingly if disability arises in the course of employment it must be presumed to have arisen therefrom unless there is substantial evidence to the contrary. Travelers Ins. Co. v. Donovan, 1955, 95 U.S. App.D.C. 331, 221 F.2d 886.

"We must recognize that 'Workmen's compensation is not confined by common-law conceptions of scope of employment. * * * the test of recovery is not a causal relation between the nature of employment of the injured person and the accident. * * * Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the "obligations or conditions" of employment create the "zone of special danger" out of which the injury arose.' O'Leary v. Brown-Pacific-Maxon, 1951, 340 U.S. 504, 506, 71 S.Ct. 470, 471, 95 L.Ed. 483."

In the recent case of Self v. Hanson, 305 F.2d 699 (9th Cir., 1962) the Court of Appeals for the Ninth Circuit allowed a compensation award where the claimant was employed on the Island of Guam by a construction company and while sitting with an acquaintance in a truck parked in a turn-around area was injured by an army weapons carrier running out of control and crashing into the side of the truck. The Court said (305 F.2d page 702):

"Here was a situation where one really had no life but the company's life. Employees were restricted to a most limited portion of the island which itself provided narrow limits of confinement: its area of 206 square miles was covered by very few roads. And the effect of Guam's remoteness from other civilization—particularly Sausalito (or Palo Alto) and the mainland for Mrs. Self—was emphasized by stringent company regulations regarding departure from the island.

\* \* \* \* \* \*

"We do not think the case is to be tested by the conventional mainland case where the truck driver departs from his authorized route for his private personal convenience. And we do think this is a case where scope of employment should be construed in favor of the workman and requires the same liberal approach indicated in Central Copper Co. v. Klefisch, 34 Ariz. 230, 270 P. 629. Of course, that case varies as to the nature of the claim, and there are many fact differences.

\* \* \* \* \* \*

"And so we have concluded that Mrs. Self's injury was one 'arising out of and in the course of employment' within the Longshoremen's Act, supra. Our conclusion is not a novel one, having been, we feel, presaged by our second Williams decision, supra [Williams v. United States, 9 Cir., 248 F.2d 492]. And this court reached a similar result in the earlier, analogous, case of Hastorf-Nettles, Inc. v. Pillsbury, 9 Cir., 203 F.2d 641. There, an employee of a subcontractor on an Alaska military base construction job was faced with restricting conditions like those facing Mrs. Self here: there was a dearth of transportation and recreation facilities at the isolated construction site, and it became the custom of the prime contractor's vehicle drivers to give rides to all employees, including those of subcontractors. The employee in that case had been engaged in recreation, not company (–) scheduled or directed, in a town some forty miles from the construction site, to which he had planned to return by train (he already had his ticket), but he was offered a return ride by a prime contractor's truck driver, which he accepted. The in-

jury which he received on the drive back we found to have occurred 'in the course of employment' under the same provision of the Longshoremen's Act."

See also Gabumas v. Pan American Airways, Inc., 279 App.Div. 697, 108 N.Y.S.2d 372 (1951) where a flight stewardess recovered for injuries sustained in a bicycle ride taken solely for recreation and her pleasure during an enforced layover in Lisbon, Portugal.

United States (Gondeck) v. Pan American World Airways, Incorporated, 299 F.2d 74 (5th Cir., 1962) is relied on by Plaintiffs but the facts of the Gondeck case remove it from the last above-stated rule. There the employee worked as a diesel operator at a defense base on San Salvador Island, and on the day of his accident had completed his working day at approximately 4:00 o'clock in the afternoon. In the language of the Fifth Circuit:

" * * * With seven or eight other employees he went to the Reef Club where they sat around drinking champagne, with time out for chow, until about 7:30 o'clock in the evening when Gondeck, in the company of James F. Norman, Fox F. Fry and R. M. Smith, took off in the jeep for town. They went to the Blue Marlin, a native club, where they stayed for about fifteen minutes, had a beer, and started back to the Base with Norman driving the jeep. The use of the jeep for personal missions of employees was forbidden by Pan American. Norman and Smith had been warned a few days earlier that the jeep was not to be used except for official business. It was not shown whether this was known by Gondeck. As the jeep approached the gate to the Base, it went out of control, skidded, and turned over. Smith was killed. Gondeck sustained brain injuries from which he died three days later. In his order making an award of compensation the Deputy Commis-sioner found, among other things, that Gondeck had completed his day's work and was, on the journey to Cockburn Town, seeking reasonable recreation and entertainment, that he was on call for emergency duty. An award was made to the widow for herself and the child of the decedent by the Deputy Commissioner against Pan American and Travelers Insurance Company, its compensation insurance carrier."

In the Gondeck case the employee at the time of injury was, in the words of the Fifth Circuit in denying recovery (299 F.2d 77):

" * * * in an expedition made in the employer's jeep which the employees were prohibited from using for such purposes."

In the case now before this Court the deceased Ecker was, by the terms of his employment, confined to the limits of the Korean area for two years; during that time he was on a 365-day per year work basis subject to the call of his employer at any time. It was reasonable to conclude that recreational activities contributed to a higher efficiency of the employer's work and that when conducted in the restricted area of employment, on a work day, so to speak, and in a manner not prohibited by the employer, such activity was an incident of the employment. I further conclude that the obligations and conditions of employment created the zone of danger out of which Ecker's injury arose.

 Therefore, I hold that the Deputy Commissioner was correct in his finding that the conditions of the deceased's employment created a zone where the deceased Ecker had to seek recreation under exacting and unconventional conditions and that therefore the accident and death of the decedent arose out of and in the course of employment.

The Order of the Deputy Commissioner awarding compensation should be affirmed, and Judgment will be entered accordingly.