O'KEEFFE, DEPUTY COMMISSIONER, BUREAU
OF EMPLOYEES' COMPENSATION, U. S. DE-
PARTMENT OF LABOR *v.* SMITH, HINCHMAN
& GRYLLS ASSOCIATES, INC., ET AL.

No. 307. Decided March 29, 1965.

*Solicitor General Cox, Assistant Attorney General
Douglas* and *Morton Hollander* for petitioner.

*George W. Ericksen* for respondents.

PER CURIAM.

Robert C. Ecker drowned during a Saturday outing
while boating on a South Korean lake. At the time
of his death he was employed at a defense base in South
Korea by the respondent, Smith, Hinchman & Grylls
Associates, a government contractor.

The decedent had been hired in the United States under an oral contract the terms of which provided that he was to be transported to South Korea at his employer's expense, remain there for two years, and then, at his employer's expense, be transported back to the United States. The employer paid his rent and provided him with a per diem expense allowance for each day of the year, including weekends and holidays, to cover "the necessary living expenditures in the Korean economy." He worked on a "365 day per year basis . . . subject to call to the job site at any time." He "quite often" worked on Saturdays and Sundays and at other times outside the normal work day. The employer considered all its employees to be "in the course of regular occupation from the time they leave the United States until their return." The employer expected the decedent and its other employees to seek recreation away from the job site on weekends and holidays.

Based upon the above stipulated facts, the Deputy Commissioner of the Bureau of Employees' Compensation, United States Department of Labor, petitioner herein, determined "that the accident and the subsequent death of the decedent arose out of and in the course of employment." 222 F. Supp. 4, 6. He therefore awarded death benefits to the decedent's widow and a minor child in accordance with the terms of the Longshoremen's and Harbor Workers' Compensation Act, 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.* (1958 ed.), as extended by the Defense Base Act, 55 Stat. 622, as amended, 42 U. S. C. § 1651 *et seq.* (1958 ed.). The employer and its insurance carrier, respondents herein, then brought this action in the United States District Court for the Middle District of Florida to set aside and enjoin the enforcement of this compensation award. The District Court affirmed the compensation award and granted the Deputy Commissioner's motion for summary judgment. 222 F. Supp. 4.

A panel of the Court of Appeals for the Fifth Circuit summarily reversed and set aside the award. 327 F. 2d 1003. But compare the later decision of another panel of the Fifth Circuit in *O'Keeffe* v. *Pan American World Airways, Inc.,* 338 F. 2d 319.

The petition for writ of certiorari is granted and the judgment of the Court of Appeals is reversed. Section 2 (2) of the Act, 33 U. S. C. § 902 (2) (1958 ed.), provides workmen's compensation for any "accidental injury or death arising out of and in the course of employment." Section 19 (a), 33 U. S. C. § 919 (a) (1958 ed.), provides for the filing of a "claim for compensation" and specifies that "the deputy commissioner shall have full power and authority to hear and determine all questions in respect of such claim." Section 20 (a), 33 U. S. C. § 920 (a) (1958 ed.), provides that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of this chapter." Finally, § 21 (b), 33 U. S. C. § 921 (b) (1958 ed.), provides that the Deputy Commissioner's compensation order may be suspended and set aside by a reviewing court only "[i]f not in accordance with law."

In cases decided both before and after the passage of the Administrative Procedure Act, 60 Stat. 237, as amended, 5 U. S. C. § 1001 *et seq.* (1958 ed.), the Court has held that the foregoing statutory provisions limit the scope of judicial review of the Deputy Commissioner's determination that a "particular injury arose out of and in the course of employment." *Cardillo* v. *Liberty Mutual Ins. Co.,* 330 U. S. 469, 477–478; *O'Leary* v. *Brown-Pacific-Maxon, Inc.,* 340 U. S. 504, 507–508.

> "It matters not that the basic facts from which the Deputy Commissioner draws this inference are undisputed rather than controverted. . . . It is like-

wise immaterial that the facts permit the drawing of diverse inferences. The Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if otherwise sustainable, may not be disturbed by a reviewing court. . . . Moreover, the fact that the inference of the type here made by the Deputy Commissioner involves an application of a broad statutory term or phrase to a specific set of facts gives rise to no greater scope of judicial review. . . ." *Cardillo* v. *Liberty Mutual Ins. Co., supra,* at 478.

The rule of judicial review has therefore emerged that the inferences drawn by the Deputy Commissioner are to be accepted unless they are irrational or "unsupported by substantial evidence on the record . . . as a whole." *O'Leary* v. *Brown-Pacific-Maxon, Inc., supra,* at 508.

The *Brown-Pacific-Maxon* case held that the standard to be applied by the Deputy Commissioner does not require "a causal relation between the nature of employment of the injured person and the accident. *Thom* v. *Sinclair,* [1917] A. C. 127, 142. Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer. All that is required is that the 'obligations or conditions' of employment create the 'zone of special danger' out of which the injury arose." *Id.,* at 507. And, borrowing from language in *Matter of Waters* v. *Taylor Co.,* 218 N. Y. 248, 252, 112 N. E. 727, 728, the Court in *Brown-Pacific-Maxon* drew the line only at cases where an employee had become "so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment." 340 U. S., at 507. This standard is in accord with the humanitarian nature of the Act as exemplified by the statutory command that "[i]n any proceeding for the enforcement of a claim for compensation under this chap-

ter it shall be presumed, in the absence of substantial evidence to the contrary . . . [t]hat the claim comes within the provisions of this chapter." § 20 (a), 33 U. S. C. § 920 (a).

In this case, the Deputy Commissioner, applying the *Brown-Pacific-Maxon* standard to the undisputed facts, concluded "that the accident and the subsequent death of the decedent arose out of and in the course of employment." 222 F. Supp. 4, 6. The District Court, likewise applying the *Brown-Pacific-Maxon* standard, held "that the Deputy Commissioner was correct in his finding that the conditions of the deceased's employment created a zone where the deceased Ecker had to seek recreation under exacting and unconventional conditions and that therefore the accident and death of the decedent arose out of and in the course of employment." 222 F. Supp., at 9.

We agree that the District Court correctly affirmed the finding of the Deputy Commissioner. While this Court may not have reached the same conclusion as the Deputy Commissioner, it cannot be said that his holding that the decedent's death, in a zone of danger, arose out of and in the course of his employment is irrational or without substantial evidence on the record as a whole. The decedent was hired to work in the exacting and unconventional conditions of Korea. His transportation over and back was to be at the employer's expense, and while there he was considered to be working on a 365-day-per-year basis, subject to call at the job site at any time, and quite often he worked Saturdays and Sundays and at other times outside the working day. The employer considered decedent and all other employees at this hazardous overseas base to be "in the course of regular occupation from the time they leave the United States until their return." Finally, the employer provided neither housing nor recreational activities for its employees, but expected them to live, while necessarily in the country to perform its work,

under the exacting and dangerous conditions of Korea. The employer paid decedent's rent and provided him with a per diem expense allowance for each day of the year, including weekends and holidays, to cover the necessary living expenses in the Korean economy. The accident here occurred on an outing for a short period of time on a lake located only 30 miles from the employer's job site. In the words of the District Court, "It was reasonable to conclude that recreational activities contributed to a higher efficiency of the employer's work and that when conducted in the restricted area of employment, on a work day, so to speak, and in a manner not prohibited by the employer, such activity was an incident of the employment." 222 F. Supp. 4, 9.

The dissent, while giving lip service to the *Brown-Pacific-Maxon* standards, would reverse the determination of the Deputy Commissioner and District Court here, as well as the Deputy Commissioner and the Courts of Appeals in other cases, that the several accidents involved were within the "zone of special danger." As *Brown-Pacific-Maxon* made clear, it is just this type of determination which the statute leaves to the Deputy Commissioner subject only to limited judicial review. Indeed, this type of determination, depending as it does on an analysis of the many factors involved in the area of the employment, would seem to be one peculiarly for the Deputy Commissioner.

The District Court therefore correctly upheld the determination of the Deputy Commissioner and the Court of Appeals erred in summarily reversing its judgment. Cf. *O'Keeffe* v. *Pan American World Airways, Inc.,* 338 F. 2d 319 (C. A. 5th Cir. 1964); *Pan American World Airways, Inc.* v. *O'Hearne,* 335 F. 2d 70 (C. A. 4th Cir. 1964); *Self* v. *Hanson,* 305 F. 2d 699 (C. A. 9th Cir. 1962); *Hastorf-Nettles, Inc.* v. *Pillsbury,* 203 F. 2d 641 (C. A. 9th Cir. 1953).

Since we believe that the Deputy Commissioner and District Court properly applied the *Brown-Pacific-Maxon* standard, and since we deem it necessary to preserve the integrity of the administrative process established by Congress to effectuate the statutory scheme, the judgment of the Court of Appeals is

*Reversed.*

MR. JUSTICE HARLAN, whom MR. JUSTICE CLARK and MR. JUSTICE WHITE join, dissenting.

Ecker was employed in Seoul, Korea, as an assistant administrative officer for Smith, Hinchman & Grylls Associates, Inc., an engineering management concern working under contracts with the United States and Korean Governments. His duties were restricted to Seoul where he was responsible for personnel in the stenographic and clerical departments. He was subject to call at the job site at any time, but the usual work week was 44 hours, and employees were accustomed to travel far from the job site on weekends and holidays for recreational purposes. Ecker did not live at the job site; he was given an allowance to live on the economy in Seoul. On his Memorial Day weekend he went to a lake 30 miles east of Seoul where a friend of his (not a co-employee) had a house. Ecker intended to spend the holiday there with his friend and another visitor. Their Saturday afternoon project was to fill in the beach in front of the house with sand, but none was readily available. In order to obtain it the three crossed the lake in a small aluminum boat to a sandy part of the shore. There they filled the boat with a load of sand, intending to transport it back to the house. The return trip, however, put Archimedes' Principle to the test; in the middle of the lake the boat capsized and sank. Two of the three men drowned, including Ecker.

The Longshoremen's and Harbor Workers' Compensation Act,[1] as extended by the Defense Bases Act,[2] provides workmen's compensation for any

> "accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment." 33 U. S. C. § 902 (2).

The Court holds, *per curiam*, that Ecker died in the course of his employment. I see no meaningful interpretation of the statute which will support this result except a rule that any decision made by a Deputy Commissioner must be upheld (compare *Rogers* v. *Missouri Pac. R. Co.*, 352 U. S. 500). That interpretation, although meaningful, is unsupportable.

*O'Leary* v. *Brown-Pacific-Maxon, Inc.*, 340 U. S. 504, relied upon by the Court, did not establish such a rule. The Court there upheld a compensation award arising from the accidental death of an employee of a government contractor on the island of Guam. The employer maintained for its employees a recreation center near the shoreline along which ran a very dangerous channel. After spending the afternoon at the employer's recreation center, and while waiting for the employer's bus, the employee heard cries for help from two men in trouble in the channel. He drowned in his attempt to rescue them. Mr. Justice Frankfurter, writing for the Court, stated the standard of coverage as:

> "All that is required is that the 'obligations or conditions' of employment create the 'zone of special

---

[1] 44 Stat. 1424, as amended, 33 U. S. C. § 901 *et seq.* (1958 ed.).

[2] 55 Stat. 622, as amended, 42 U. S. C. § 1651 *et seq.* (1958 ed.).

danger' out of which the injury arose." 340 U. S., at 507.

That language was intended to mean only that where the employer had placed a facility for employees in an especially dangerous location and thus had created a danger of accidents, a "reasonable rescue attempt" could be "one of the risks of the employment." This was made crystal clear by the *caveat:* "We hold only that rescue attempts such as that before us are not necessarily excluded from the coverage of the Act as the kind of conduct that employees engage in as frolics of their own." *Ibid.*

He went on to state that the standard of review to be applied to the Deputy Commissioner's finding that the employee died in the course of his employment was the same as that set out in *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, for review of Labor Board decisions. Mr. Justice Frankfurter wrote both *Universal Camera* and *Brown-Pacific-Maxon,* and delivered the opinions on the same day. Reliance upon *Universal Camera* in *Brown-Pacific-Maxon* shows beyond doubt that the Court was not establishing a rule that *any* compensation award by a Deputy Commissioner would be automatically upheld, for it was the whole purpose of *Universal Camera* to effectuate congressional intent that the courts *expand* their scope of review over administrative decisions. That opinion defined judicial responsibility for examining the whole record in Labor Board cases, and not just those parts of the record which tended to support the Board. It remains today as the leading judicial guide for administrative review, and the most prominent directive to lower courts not to underestimate their responsibilities in this regard. I think it untenable to read a case which purports to apply the *Universal Camera* standard of review as embodying a philosophy of judicial abdication.

I read *Brown-Pacific-Maxon* to mean that some questions of application of "arising out of and in the course of employment" to the facts of a case will be left to the discretion of the administrator, and review of his decision treated as review of a finding of fact. The cases in which this limited review of the administrator's decision is appropriate are those in which one application of the statute to the external facts of the case effectuates the judicially recognizable purpose of the statute as well as another. Dominion over the broad or clear purposes of the statute thus remains firmly in the courts' hands, while within the confines of such statutory purposes, administrators are left discretion to provide the intimate particularizations of statutory application.[3] *Brown-Pacific-Maxon* is illustrative. The employee drowned in a particularly treacherous channel with which his job brought him into proximity. The danger was not great that circumstance would force him to swim in the channel, but the danger existed and was peculiar to the locality to which his job brought him; and it was out of this special danger that the employee's injury arose. This, taken together with the other elements of job connection which the administrator thought relevant, rendered an award in the case consistent with the broad purposes of the compensation statute. Yet had the Deputy Commissioner come out the other way, I think that his decision would have been equally supportable. Although it was true that the injury was related to an especially dangerous channel with which the employee's job brought him into proximity, the administrator could have ruled that the danger, although special, was so remote that the connection between the job and the injury was not sufficient to justify compensation. Either result would have been

---

[3] See generally, Jaffe, Judicial Review: Question of Law, 69 Harv. L. Rev. 239 (1955).

consistent with the statutory purpose of compensating all job-connected injuries on the actual job site and, additionally, those injuries off the job site which result from the "special" dangers of the employment. In the sense that both results would have been supportable, the review of the choice actually made by the Deputy Commissioner was treated as review of a finding of fact.

In the case before us, the Deputy Commissioner's ruling is not consistent with the statutory purpose. The injury did not take place on the actual job site, and it did not arise out of any special danger created by the job. In no sense can it be said that Ecker's job created any "special" danger of his drowning in a lake, or more particularly, of his loading a small boat with sand and capsizing it. Nothing indicates that the lake was rougher, the boat tippier, or the sand heavier than their counterparts in the United States. If there were "exacting and unconventional conditions" in Korea it does not appear that the lake, boat, or sand was one of them. There is nothing more than a "but for" relationship between the accident and the employment. To permit the award of compensation to stand reads the "job-connected" emphasis right out of the statute, an emphasis which is clearly there. Only injuries "arising out of" the employment are compensated. A disease or infection is covered if it arises "naturally out of such employment." Injuries willfully inflicted by third persons upon an employee are covered only if inflicted "because of his employment." A "but for" relationship between the injury and the employment should not in itself be sufficient to bring about coverage.

Whether the injury is compensable should depend to some degree on the cause of the injury as well as the time of day, location, and momentary activity of the employee at the time of the accident. I would distinguish between

a case in which Ecker smashed his hand in a filing cabinet while at the office and one in which he tripped over a pebble while off on a weekend hike. In the first case Ecker's injury would have arisen out of and in the course of his employment, whereas the statute would not apply to the second case unless the injury were traceable to some special danger peculiar to the employment, which was clearly not the case. Thus, if while off on that same weekend hike Ecker stepped on a mine left over from the Korean conflict, a different result could follow.

This view of the statute makes far more sense to me than the view adopted by the Court as indicated by the result in this case and its approving citation of such cases as *Self* v. *Hanson*, 305 F. 2d 699, and *Pan American World Airways, Inc.* v. *O'Hearne*, 335 F. 2d 70, cert. denied today. It is difficult to determine just what such cases stand for. In *Self* v. *Hanson*, for instance, Miss Williams was in the company of a gentleman in a pick-up truck parked at the end of a breakwater on Guam Island at 11 o'clock in the evening. The gentleman said that he wanted to show her a ship in the harbor. Apparently they had been looking at it for over half an hour when the driver of another vehicle on the breakwater lost control and ran into the pick-up truck, causing Miss Williams spinal injuries. The Ninth Circuit upheld the Deputy Commissioner's ruling that she was injured in the course of her employment as a secretary on a Guam defense project.

To permit compensation for such injuries is to impose absolute liability upon the employer for any and all injuries, whatever their nature, whatever their cause, just so long as the Deputy Commissioner makes an award and the job location is one to which the reviewing judge would not choose to go if he had his choice of vacation spots. Before setting its stamp of approval on such an interpretation of the statute, the Court at the very least should

hear argument and receive briefs on the merits. The Solicitor General has pointed out that "there are several thousands of injury cases reported annually" under this Act.[4] He urged that this question be definitively resolved by this Court. Because of the importance placed by all parties upon resolution of the proper application of the Act to these cases, and because I do not believe *Brown-Pacific-Maxon, supra,* dictates the Court's result, I respectfully dissent from its decision to treat *O'Keeffe* v. *Smith, Hinchman & Grylls Associates, Inc.,* summarily, from its decision on the merits in that case, and from its denial of certiorari in *Pan-American World Airways, Inc.* v. *O'Hearne,* No. 474, and *Pan American World Airways, Inc.* v. *O'Keeffe,* No. 852.

MR. JUSTICE DOUGLAS, *dubitante.*

The problems under this Act should rest mainly with the Courts of Appeals.* What we said in *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, 490, of review by Courts of Appeals of decisions of the National Labor Relations Board, should be applicable here:

> "Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the

[4] Petition for certiorari in No. 307, p. 11.

*These problems are unlike those under the Federal Employers' Liability Act where suits can be brought both in state and in federal courts (45 U. S. C. § 56) and where the law, poorly received by the judiciary, has been severely eroded. See *Wilkerson* v. *McCarthy,* 336 U. S. 53, 68 *et seq.* (concurring opinion).

Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both."

Applying that test I would not be inclined to reverse a Court of Appeals that disagreed with a Deputy Commissioner over findings as exotic as we have here.