819 F.2d 1138
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
KING CONSTRUCTION COMPANY; Aetna Insurance Company, Petitioners,
v.
James F. EDWARDS; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 86-3616.
 United States Court of Appeals, Fourth Circuit.
 Argued March 4, 1987.
Decided May 19, 1987.
 
 Linda Lawrence Stankus (Godard & West, on brief), for appellants.
 David Michael LaCivita (Ashcraft & Gerel; Samuel J. Oshinsky, United States Department of Labor, on brief), for appellees.
 Before PHILLIPS and ERVIN, Circuit Judges, and RAMSEY, United States District Court Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 This case concerns the application of the District of Columbia Workers' Compensation Act, 36 D.C.Code Ann. Secs. 501-04 (1973) (hereafter "the Act"), which incorporates the benefits provisions of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 901 et. seq. (1982), in cases of injury or death of "an employee of an employer carrying on any employment in the District of Columbia, irrespective of the place where the injury or death occurs." 36 D.C.Code Ann. Sec. 501 (1973). Edwards was injured while working outside of the District of Columbia (hereafter "D.C."). Petitioners King Construction Company and its insurer, Aetna Insurance Company (hereafter "King Construction"), have appealed to this court to review an award of workers' compensation benefits to Edwards under the Act. The primary issues involve the jurisdictional limits of the Act and whether Edwards sustained a loss of wage-earning capacity.
 
 I.
 
 2
 Edwards has been a union carpenter since 1975, when he joined Local 1590 of the Carpenters Union in D.C. He began working as a carpenter for King Construction in 1977. King Construction was owned by Edwards' father-in-law. Edwards did indoor carpentry work, as opposed to outside work with heavy concrete forms, for King Construction. He injured his back in August, 1979, when a pallet holding numerous shelf inserts collapsed. Edwards and several co-workers attempted to lift the pallet up so that they could slide a dolly under it, and he sustained the injury while lifting the pallet. He filed a claim for workers' compensation benefits under the Act.
 
 
 3
 Medical reports confirm that Edwards suffered a severe low back injury. He was initially treated with exercise and medication, but eventually had to undergo back surgery in October, 1979. He returned to work in August, 1980, with King Construction. Edwards testified that he had to get help in lifting things after the injury and that he had to be careful when bending, stooping or lifting. King Construction went out of business in August, 1982.
 
 
 4
 Edwards was employed by the Giant Food Company in September, 1982. At first he did light trim work for Giant Food, but later he was required to do heavy form work. He worked with a friend who helped him with lifting and bending. He never told his new employer, Giant Food Company, about his back condition.
 
 
 5
 A formal hearing was held on Edwards' claim for workers' compensation benefits in November, 1982. King Construction conceded that jurisdiction was proper under the Act at the onset of the hearing. Despite this concession, the administrative law judge (ALJ), recognizing that some inquiry was necessary to establish the subject-matter jurisdiction of the tribunal, questioned the parties concerning Edwards' and King Construction's contacts with D.C. Edwards was also asked numerous questions regarding the extent of his back injury. He testified that his back had been gradually deteriorating since he returned to work in August, 1980. The ALJ issued an order in July, 1983, finding that jurisdiction was proper under the Act and that Edwards had sustained a loss of wage-earning capacity. The ALJ awarded benefits based on a loss of wage-earning capacity of $213.60 per week.
 
 
 6
 King Construction appealed the order to the Benefits Review Board (hereafter BRB). Before the BRB, King Construction contested both jurisdiction under the Act and Edwards' claimed loss of wage earning capacity. The BRB affirmed the order of the ALJ. King Construction thereupon appealed to this court on the same grounds that it raised before the BRB. We review the decision of the ALJ to see whether it is supported by substantial evidence in the record taken as a whole and is in accordance with law. See 33 U.S.C. Sec. 921(b)(3) (1982); O'Keefe v. Smith, Hinchman & Grylls Associates, Inc., 380 U.S. 359, 362 (1965).
 
 II.
 
 7
 A two-pronged test determines whether the Act covers a particular injured claimant.[1] The fact-finder first asks whether the employer carries on any employment in D.C. See Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469 (1947). Counsel for the employer told the ALJ that, in the year prior to Edwards' injury, twenty to thirty percent of King Construction's work was done in D.C. The first prong is concededly met in this case.
 
 
 8
 Second, the fact-finder must find that there is "some substantial connection between [D.C.] and the particular employee-employer relationship." Id. at 476. Common indicia of a substantial relationship include the residence of the employee, headquarters of the employer, and the place of making the employment contract. See 4 A. Larson, The Law of Workmen's Compensation Sec. 86.10, at 16-44 (1987). The Cardillo Court expanded this list to include whether the claimant was under orders from D.C., whether the claimant was subject to being transferred at any time back to D.C., and whether the claimant was paid out of a D.C. office. Cardillo, 330 U.S. at 475-76. The jurisdictional test is not whether some particular number of these factors is or is not present. Pettus v. American Airlines, Inc., 3 Ben.Rev.Bd.Serv. (MB) 315 (1976), rev'd on other grounds, 587 F.2d 627 (4th Cir.1978), cert. denied, 448 U.S. 883 (1980). The question is the quality of the contacts with D.C.
 
 
 9
 The Cardillo Court faced facts that included a worker, injured in Virginia, who resided in D.C., was hired in D.C., and who had worked on various projects for the employer in D.C. before being transferred for a three-year term to a project at the Quantico Marine Base, in Virginia. The injured worker commuted daily between his home in D.C. and Quantico, and he was injured while commuting. Cardillo, 330 U.S. at 475-76.
 
 
 10
 While Edwards was a resident of Maryland, the ALJ found, on the basis of a concession by King Construction, that Edwards had worked at various times in D.C. during the year before the accident. The ALJ noted that Edwards was a member of Carpenter's Union Local No. 1590 in D.C. and was hired out of that local office by the employer. The ALJ further noted that King Construction worked either all or a portion of thirty-six weeks in D.C. in the year prior to injury and that Edwards was subject to being called to work on those jobs.
 
 
 11
 Having conceded the jurisdictional issue before the ALJ, King Construction now claims that the finding that Edwards was hired out of the D.C. union office is clearly erroneous, because the employer was Edwards' father-in-law. King Construction further alleges that the contacts between D.C. and this particular employer-employee relationship are too tenuous to warrant jurisdiction. We disagree. The ALJ based his finding of jurisdiction on evidence that Edwards was a member of a carpentry union, located in D.C., at the time of his hiring. The relationship between Edwards and the employer does not render this finding clearly erroneous, and there is no other contravening evidence. Further, Edwards joined the union two years before being hired by his father-in-law.
 
 The Longshoreman's Act provides:
 
 12
 "In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary--
 
 
 13
 (a) That the claim comes within the provisions of this chapter.
 
 
 14
 33 U.S.C. Sec. 920(a) (1982). This provision "applies with equal force to proceedings under the District of Columbia Act." Cardillo, 330 U.S. at 474; see also Director, Office of Workers' Compensation Programs v. National Van Lines, 613 F.2d 972, 980 (D.C.Cir.1979), cert. denied, 448 U.S. 907 (1980). There is no "substantial evidence to the contrary" in Edwards' case; in fact, it is uncontroverted that Edwards was subject to being called into D.C. to work at any time during the prior year. This fact, added to the ALJ's finding, based on King Construction's concession, that Edwards had actually worked in D.C. on several occasions in the year before the accident, and that Edwards was hired out of the union office in D.C., is an adequate basis to support jurisdiction under the Act.
 
 III.
 
 15
 Despite the fact that Edwards had returned to work, the ALJ found that his then-current wages did not fairly and reasonably represent his true wage-earning capacity.[2] One medical report indicated that Edwards had suffered a 15% permanent partial disability of his back; the ALJ regarded this as "quite tentative" because the doctor "was only able to state that claimant was doing fairly well' and he was not ready to discharge claimant at that time." An orthopedic surgeon later estimated that Edwards had suffered a 55% permanent disability. A third doctor concluded that the disability was 35%. Both later medical opinions indicated that Edwards had suffered permanent limitations due to his back injury. The ALJ reviewed this testimony, and Edwards' account of his limitations in his present job, in concluding that Edwards' current wages did not fairly and reasonably represent his wage-earning capacity.
 
 
 16
 The ALJ then fixed Edwards' wage-earning capacity pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 908(h) (1982).[3] Edwards submitted the deposition of a rehabilitation counselor who had interviewed Edwards twice and who had administered vocational tests. On the basis of this testimony, the ALJ found that Edwards was now capable of earning wages as a maintenance or "journeyman" carpenter with the federal government. Such a job paid $9.58 per hour, or $383.20 per week, in 1982. The ALJ compared this figure with the $14.92 per hour, or $596.80 per week,[4] that Edwards actually received when he returned to his job with his father-in-law. Finding that this increased figure was due to the beneficence of Edwards' employer, the ALJ treated the difference in these two figures as the amount of reduced earning capacity. The ALJ computed the difference as $213.60 per week, of which two-thirds is statutorily compensable; based on this computation, the ALJ awarded compensation for a permanent partial disability commencing August 4, 1980, at a compensation rate of $142.40 per week.
 
 
 17
 The BRB affirmed this finding of loss of wage-earning capacity. King Construction argues that there has been no evidence of Edwards' inability to procure work at high wages and that, in any event, Edwards would receive more than the $9.58 per hour of a journeyman carpenter. In fact, there was substantial evidence for the ALJ's calculation. The two later medical reports indicate a permanent partial disability of from 35% to 55%. The employer offered no independent evidence of Edwards' wage-earning capacity other than his actual earnings figures from the employer. The ALJ found that these actual figures depended on the beneficence of the employer and did not represent Edwards' true earning capacity in the market. Given the fact that this disability may be gradually more disabling over time, in accordance with Edwards' testimony, the ALJ correctly disposed of the case.
 
 
 18
 AFFIRMED.
 
 
 
 [1]
 The broad language of the Act has been limited to accord with the full faith and credit clause of the United States Constitution, art. IV, Sec. 1. See Cardillo v. Liberty Mutual Insurance Co., 330 U.S. 469, 476 (1947)
 
 
 [2]
 The Longshore and Harbor Workers' Compensation Act defines disability as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. Sec. 902(10) (1982). Permanent partial disability is determined by the difference between a claimant's average weekly wage at the time of injury and his wage-earning capacity after injury. See id. Sec. 908(c)(21). Wage-earning capacity is determined by actual earnings, unless actual earnings do not fairly and reasonably represent wage-earning capacity. Id. Sec. 908(h)
 
 
 [3]
 The section provides that where actual earnings do not fairly and reasonably represent wage-earning capacity, the adjudicator may:
 fix such wage-earning capacity as shall be reasonable, having due regard to the nature of [claimant's] injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future.
 33 U.S.C. Sec. 908(h) (1982).
 
 
 [4]
 The ALJ's opinion erroneously reports this figure as $592.80, but the error was corrected in the next step of the calculation, when $383.20 was subtracted to yield a loss of wage earning capacity of $213.60