NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
━━━━━━━━━━━━

No. 12-1912
━━━━━━━━━━━━

JOHN E. GINDVILLE,

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS COMPENSATION PROGRAMS;
GREENWICH TERMINALS, LLC; COMPANION COMMERICAL
INSURANCE COMPANY,

Respondents
━━━━━━━━━━━━

On Petition for Review of the Decision and Order of
The Benefits Review Board
(BRB No. 11-0583)
━━━━━━━━━━━━

Submitted Under Third Circuit LAR 34.1(a)
April 15, 2013


Before:  AMBRO, HARDIMAN, and COWEN, Circuit Judges

(Opinion filed: April 25, 2013)

━━━━━━━━━━━━

OPINION
━━━━━━━━━━━━


AMBRO, Circuit Judge


1

Petitioner John E. Gindville seeks review of the decision of the Benefits Review Board ("Board") affirming the Administrative Law Judge's ("ALJ") denial of compensation benefits from his employer, Greenwich Terminals, LLC ("Greenwich"). Gindville sought those benefits pursuant to the Longshore & Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.* ("LHWCA"). The ALJ determined that Gindville had failed to make out a *prima facie* case of a compensable injury because the evidence was insufficient to establish the existence of a work-related incident that could have caused his right knee condition, and therefore denied his claim for temporary total disability and medical benefits. The Board affirmed as neither inherently incredible nor patently unreasonable the ALJ's conclusion that no credible evidence supported finding that an accident occurred at work on the date alleged by Gindville. For the following reasons, we affirm.

I.

Gindville, a career longshoreman on the Philadelphia/Camden waterfront, claims that he injured his right knee on June 30, 2009, while walking down a gangway during a shift he was working for Greenwich.[1] He filed a claim in September 2009 for benefits under the LHWCA, which Greenwich refused on the ground that no work-related injury had occurred. Until one week prior to the alleged injury, Gindville served as a "ship boss" for Greenwich for over 20 years; however, on June 24, 2009, he was demoted from

---

[1] Gindville has a significant history of knee problems, and he previously injured his left knee when he fell while working for Greenwich in November 2007. J.A. at 118.

2

this position to "gang boss" due to company cutbacks.[2]  Gindville's testimony before the ALJ regarding his demotion, which was relayed to him on June 24 during a meeting with John Burleson, general manager of Greenwich, conflicted with Burleson's recounting of the meeting.  Burleson testified that Gindville responded to the news angrily and threatened the company by stating he would purposely get hurt; Gindville denied having done so.[3]

As for the injury Gindville allegedly suffered on June 30, it is undisputed that there were no witnesses to the accident.  Gindville testified about the circumstances surrounding his injury, asserting that he turned while on the gangway and twisted his knee, feeling a "pop."  Aside from his own testimony, Gindville's son testified that he saw his father "limping over . . . from the gangway," and that, when he asked him what had happened, Gindville said "I just twisted my knee on the gangway."  J.A. at 622.  The son stated he responded by suggesting that Gindville inform Captain William Sammons, Greenwich's director of safety and loss control, of his injury.  Gindville said that he then reported his injury to Sammons, who was standing near a fellow longshoreman, Russell Kosofsky.  *Id.* at 557.  Kosofsky similarly testified that, while getting a safety vest from Sammons, he heard Gindville tell the Captain he had twisted his knee.  *Id.* at 617–18.

---

[2] A "gang" is the basic working unit for longshoremen, each of which is directly supervised by a "gang boss," and "ship bosses" are directly in charge of all "gangs" working a ship.

[3] Gindville also disputed several descriptions of alleged conversations with and comments made by him as recounted by various Greenwich employees.  Those inconsistencies the ALJ noted in reaching her decision that Gindville lacked credibility.

Captain Sammons' testimony, however, contradicted this version of events.  He had no recollection of Gindville reporting an injury or accident to him on June 30, 2009, and that Greenwich's safety records did not contain any injury report for Gindville on that day.  *Id.* at 690, 693.  Sammons' testimony also contradicted Kosofsky's, as Sammons explained that he personally handed out only two safety vests on June 30, neither of which was issued to Kosofsky, and that Greenwich's records for safety vest issuance confirmed that Kosofsky did not receive a safety vest from the Captain that day.  *Id.* at 694–95, 716–17, 720.  Sammons also provided detailed testimony regarding Greenwich's procedures for documenting both work injuries and the issuance of new safety vests.  *Id.* at 683–89, 692, 723–24.

The ALJ also reviewed medical testimony and opinions submitted by both parties. The only medical corroboration for Gindville's alleged June 30 injury was provided by his treating physician, Dr. Peter J. DeLuca, who testified that Gindville visited him in July 2009 for pain in his right knee from a recent work-related injury.  *Id.* at 219.  No date of accident or manner of injury was mentioned in Dr. DeLuca's physician notes of this visit, however, whereas his notes from previous visits contained detailed descriptions of Gindville's injuries and the way in which they were sustained.  *Id.* at 219, 233.  Dr. DeLuca acknowledged that, other than a work-restriction document on which the date of injury was changed from November 2007 ("a clerical error"), the date June 30, 2009 appeared nowhere in his treatment records.  *Id.* at 223, 237.  The treatment records of four other orthopedic physicians who examined Gindville in connection with his claim

4

were submitted to the ALJ, none of which contained any reference to an accident or injury at work on June 30, 2009.[4]

The ALJ issued her decision in April 2011 denying Gindville's claim for medical and disability compensation benefits. Reviewing this and the other evidence submitted, the ALJ found Gindville had failed to prove an accident occurred in the course of employment, and thus had not established a *prima facie* case for compensation. Under § 20(a) of the LHWCA, a presumption is created that an injury arose out of employment if the claimant meets his burden of showing that (1) he sustained an injury or physical harm, and (2) a work-related accident occurred, or conditions existed at work, which could have caused or aggravated that harm. *See Merrill v. Todd Pac. Shipyards Corp.*, 25 BRBS 140 (1991); *Kier v. Bethlehem Steel Corp.*, 16 BRBS 128, 129 (1984). The ALJ determined that Gindville had failed to establish the second element of a *prima facie* case, finding his testimony to be lacking credibility due to inconsistencies with the testimony of other Greenwich employees and physicians' treatment records.

In February 2012, the Board affirmed the ALJ's determination that Gindville had failed to make out a *prima facie* case necessary to invoke the § 20(a) presumption of a work-related injury and, accordingly, her denial of benefits. The Board rejected that the ALJ erred in addressing evidence other than Gindville's submissions to determine whether he established a *prima facie* case. It noted the ALJ's authority to make

---

[4] For instance, Dr. Mario J. Arena stated that, during his August 2009 examination, Gindville complained of pain in both knees, which he attributed to activities associated with his change in duties as gang boss. J.A. at 340–41. Dr. Arena explained it was his practice to take detailed histories of patients, and that he was certain Gindville did not mention a specific injury involving a twisted knee on June 30, 2009. *Id.* at 343–44.

credibility determinations based on her evaluation of all witnesses and evidence presented.  Gindville now petitions us to reverse the Board's decision.

## II.

The ALJ had jurisdiction to hear Gindville's claim for benefits pursuant to 33 U.S.C. § 919, and the jurisdiction of the Board to hear and determine appeals of the decision of the ALJ arose under 33 U.S.C. § 921(b).  Pursuant to 33 U.S.C. § 921(c), we have jurisdiction to review the final decision and order of the Board.

Our review of the Board's interpretation of the law and adherence to the statutory scope of review is plenary.  *Barbera v. Dir., OWCP*, 245 F.3d 282, 287 (3d Cir. 2001) (citing *Pa. Tidewater Dock Co. v. Dir., OWCP*, 202 F.3d 656, 660 (3d Cir. 2000)).  "The Board must accept the ALJ's findings unless they are contrary to law, irrational or unsupported by substantial evidence in the record as a whole." *Id.* (citing *Pa. Tidewater Dock Co.*, 202 F.3d at 660; *O'Keeffe v. Smith, Hinchman & Grylls Assocs.*, 380 U.S. 359 (1965)).  Credibility determinations made by the ALJ may not be overturned unless they are in "conflict with the clear preponderance of the evidence, or where the determinations are 'inherently incredible or patently unreasonable.'" *Cordero v. Triple A Mach. Shop*, 580 F.2d 1331, 1335 (9th Cir. 1978) (internal citations omitted) (quoting *NLRB v. Anthony Co.*, 557 F.2d 692, 695 (9th Cir. 1977)).

## III.

Having reviewed the record, we are satisfied that the Board applied the proper scope of review to the ALJ's findings and credibility determinations.  The ALJ found Gindville's testimony inconsistent with, and uncorroborated by, the record as a whole.

6

The Board rejected Gindville's challenge to the ALJ's consideration of evidence submitted by Greenwich to find him not credible, and it concluded that the ALJ was permitted to "assess the sufficiency of [Gindville's] evidence supportive of his *prima facie* case in light of evidence that detracts therefrom."  J.A. at 86 (citing *Goldsmith v. Dir., OWCP*, 838 F.2d 1079 (9th Cir. 1988); *Brown v. Pac. Dry Dock*, 22 BRBS 284 (1989); *Mackey v. Marine Terminals Corp.*, 21 BRBS 129 (1988)).  We agree with the Board that the ALJ was entitled to evaluate the credibility of Gindville's testimony regarding the occurrence of a work-related accident in light of other relevant record evidence.  *See, e.g.*, *Bartelle v. McLean Trucking Co.*, 687 F.2d 34 (4th Cir. 1982).

The Board refused to disturb the ALJ's credibility determinations, finding them neither patently unreasonable nor inherently incredible.  J.A. at 88 (citing *Cordero*, 580 F.2d 1331; *Todd Shipyards Corp. v. Donovan*, 300 F.2d 741 (5th Cir. 1962)).  Thus, in the absence of credible evidence in the record to support Gindville's assertion that an accident occurred at work on June 30, 2009, the Board affirmed the ALJ's determination that Gindville had failed to make out his *prima facie* case.  *Id.*  Our review of the record confirms that the ALJ's decision to discredit Gindville's testimony, and conclusion that he was not entitled to the § 20(a) presumption, were rational, extensively explained, and supported by substantial evidence.  *See Bolden v. G.A.T.X. Terminals Corp.*, 30 BRBS 71 (1996).

\* \* \* \* \*

Accordingly, we deny the petition for review of the Board's decision affirming the ALJ's denial of benefits.

7