585 F.2d 791
 ARMY & AIR FORCE EXCHANGE SERVICE and Employers Mutual
Liability Insurance Co., Petitioners,
v.
Margaret GREENWOOD, Respondent,
Director, Office Of Workmen's Compensation Programs, United
States Department Of Labor, Party in Interest.
 No. 77-2903.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 8, 1978.
As Amended Jan. 15, 1979.
 
 Wood Brown, III, New Orleans, La., for petitioners.
 Carin A. Clauss, Sol. of Labor, U. S. Dept. of Labor, Washington, D. C., Ronald E. Meisburg, Bobby G. O'Barr, Biloxi, Miss., Linda L. Carroll, U. S. Dept. of Labor, Washington, D. C., for respondent.
 On Petition for Review of An Order of the Benefits Review Board.
 Before GOLDBERG, Circuit Judge, SKELTON*, Senior Judge, and FAY, Circuit Judge.
 FAY, Circuit Judge:
 
 
 1
 Appellee, Mrs. Margaret Greenwood, sought compensation under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 Et seq. (Supp.1970-1977), for permanent total disability or, in the alternative, permanent partial disability, as a result of a back injury she sustained during the course of her employment at the Keesler Air Force Exchange. Administrative Law Judge George A. Fath denied compensation to Mrs. Greenwood. This decision was reversed by the Benefits Review Board which remanded the case to the Administrative Law Judge with instructions to enter a finding of permanent disability pursuant to Section 8(a) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 908(a),[1] and to make an appropriate award of benefits. The employer, the Army & Air Force Exchange Service (AAFES), and the carrier, Employers Mutual Liability Insurance Co., appeal the decision of the Benefits Review Board. We affirm.
 
 I. FACTS
 
 2
 Mrs. Greenwood, age 61, had worked at the Exchange as a relief employee from May 1, 1971 until her injury on July 30, 1974. On July 30, Mrs. Greenwood lifted a crate of lettuce from a shelf onto the floor, pushed it across the floor and lifted it onto a "buggy". Shortly thereafter her lower back began hurting, but she continued to work until half an hour before the end of her regular workday. The morning after the injury she was unable to get up and return to work as a result of the pain she was experiencing. The injury appellee sustained while lifting the crate of lettuce was diagnosed as a "chronic lumbosacral strain." Mrs. Greenwood has not worked since the injury except for a brief period between October 28, 1974 and November 3, 1974.
 
 
 3
 Appellee consulted with a number of specialists after her injury. In addition to the lumbosacral strain, these physicians found a number of degenerative and congenital back conditions which existed before the injury of July 30, 1974. Among these conditions were scoliosis (abnormal curvature of the spine) and spondylolisthesis (protruding vertebral disc). An orthopedist, Dr. John O'Keefe, diagnosed Mrs. Greenwood's condition as a strain of the lower back. Dr. O'Keefe prescribed "hot soaks" and a "lumbosacral corset" and gave appellee some medication for her injury. At the administrative hearing Dr. O'Keefe testified that on a follow-up examination on August 26, 1974, Mrs. Greenwood complained of pain in her right thigh. After an examination on October 28, 1974, Dr. O'Keefe released appellee to return to full duty at work. However, appellee testified that she was forced to leave her employment after one week because of constant pain. Since that time, she has not returned to work. There was testimony from Mrs. Greenwood that she was unable to work due to the pain in her back and in her legs. Another physician, Dr. Magruder Sullivan Corban, testified that it was his opinion, based on the history given by Mrs. Greenwood, that the injury in question contributed to her back pain. However, Dr. Corban further testified at the administrative hearing in July, 1976 that in November, 1975 he felt Mrs. Greenwood would be able to function at the same level she had functioned before the accident.
 
 
 4
 Appellee's weekly wage at the time of the injury was $88.80. She was paid $72.85 weekly compensation from July 31, 1974 until October 28, 1974 and from November 3, 1974 until November 20, 1974. At the time of the administrative hearing, Mrs. Greenwood's income consisted of $45 per week alimony and $150 per month for rent from land she owned at a trailer park. In addition, two of her children were contributing $50 weekly for her support.
 
 II. RECOVERY OF WORKMEN'S COMPENSATION
 
 5
 It should be noted that there are two important and often competing theories in workmen compensation appeals to this Court: the first concerns the strong judicial and legislative policy favoring awards to injured workers; the second concerns the well-settled rule that if the administrative law judge's decision is supported by the evidence as a whole and is not inconsistent with the law, it should be upheld. Cardillo, Deputy Comm'r, United States Employees' Compensation Comm'n. v. Liberty Mutual Ins. Co. et al., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947). The legislative policy is best stated as follows:
 
 
 6
 It is important to note that adequate workmen's compensation benefits are not only essential to meeting the needs of the injured employee and his family, but, by assuring that the employer bears the cost of unsafe conditions, serves to strengthen the employer's incentive to provide the fullest measure of on-the-job safety.
 
 
 7
 H.R.Rep.No.1441, 92d Cong., 2nd Sess., Reprinted in (1972) U.S.Code Cong. & Admin.News, pp. 4698, 4699.
 
 
 8
 Similarly, the judicial policy has long been to resolve all doubts in favor of the employee and his family and to construe the Act in favor of the employee for whose benefit it is primarily intended. See Strachan Shipping Co. v. R. J. Shea, 406 F.2d 521 (5th Cir. 1969).
 
 
 9
 In the case before us, the Administrative Law Judge found that Mrs. Greenwood was not eligible for continued workmen's compensation. Mrs. Greenwood appealed to the Benefits Review Board as authorized by 33 U.S.C.A. § 921(b)[2] which found that the Administrative Law Judge erred in holding that no doubts existed concerning her lack of permanent injury. The power of this Court to affirm, modify or set aside the Review Board's Order is found in 33 U.S.C.A. § 921(c).[3] Referring to the standard of review this Court is to apply when faced with an appeal from the Review Board, this Court stated:
 
 
 10
 Although the standard of review in this Court is not set out in the statute, it is evident that we are to review only errors of law, and to make certain that the Board adhered to its statutory standard of review of factual determinations. This then is unlike a review of a labor board decision where the Board may disagree with an administrative law judge as to factual matters and must be sustained if its own determinations pass the substantial evidence test.
 
 
 11
 Presley v. Tinsley Maintenance Service, 529 F.2d 433, 436 (5th Cir. 1976). Thus, although the Review Board cannot substitute its views for those of the administrative law judge or engage in a "de novo review of the evidence", the Board has the power to reverse the administrative law judge if his determinations are not supported by substantial evidence in the record as a whole.
 
 
 12
 In the case before us the Review Board stated that, in denying compensation to Mrs. Greenwood, Administrative Law Judge Fath acknowledged the principle that all doubts must be resolved in favor of the person making the claim but the Administrative Law Judge nevertheless held that this presumption had been overcome by substantial evidence on the record which showed that the injury was not disabling and that it did not aggravate a pre-existing condition. The Review Board found that the Administrative Law Judge acted in an irrational and arbitrary manner in denying benefits to Mrs. Greenwood by giving significant credence to the testimony of Dr. O'Keefe on the one hand and saying that such testimony weighed heavily against compensability on the other hand. "If anything," the Review Board stated, "Dr. O'Keefe's testimony tends to support claimant's claim of continuing pain and disability and is ambiguous on the issue of causation. In such a case, the presumption of compensability of Section 20(a), which includes the presumption of causal connection between an employee's injury and his work activities, is not overcome." --- BRBS ---, BRB No. 76-332 (July 28, 1977) at 4. As an example the Board stated that Dr. O'Keefe testified that he did not know whether Mrs. Greenwood's injury aggravated her pre-existing back condition; that he could not give an opinion as to Mrs. Greenwood's condition at the time of the compensation hearing since he had not seen her for seventeen months; that in November, 1974 it was his opinion that there was no likelihood that Mrs. Greenwood could return to work; and that Mrs. Greenwood was a very nervous person who had a "psychic overlay" which resulted in "increased subjective pain." Id. At 3-4.
 
 
 13
 The Review Board was certainly correct in finding that Dr. O'Keefe's testimony supported Mrs. Greenwood's claim of continuing pain and disability. It was further correct in finding that Dr. Buckley testified that the lumbosacral strain aggravated Mrs. Greenwood's spondylolisthesis, that such aggravation to appellee's injury could create symptoms which would last a long time, and that the Administrative Law Judge overlooked this when he held that Dr. Buckley expressly attributed Mrs. Greenwood's disability to causes unrelated to the injury. In addition, the Review Board correctly found that although Dr. Buckley and Dr. Corban believed Mrs. Greenwood's back condition, including any aggravation of this condition, constituted only 5% Functional impairment, it was clear that the effect was to prevent her from ever again being able to perform in her former occupation or any other occupation.[4]The Act neither provides a definition of nor a standard by which to determine what constitutes "total" as opposed to "partial" disability. It is well settled in this Circuit, however, that the "degree of disability 'cannot be measured by physical condition alone. Other factors must be considered, such as age, education, industrial history and the availability of work which the (injured worker) can do.' "
 
 
 14
 Diamond M. Drilling Co. v. Marshall, 577 F.2d 1003, 1005-1006 (5th Cir. 1978).
 
 III. CONCLUSION
 
 15
 Under Presley we must sustain the Review Board's determinations if there is substantial evidence to support these determinations. 529 F.2d at 436. It is true that although the Review Board may reverse the administrative law judge if his determinations are not based on substantial evidence on the record as a whole, the Board cannot substitute its judgment for that of the administrative law judge. However, in the case before us, the Board was correct in finding that the Administrative Law Judge erred in saying Mrs. Greenwood's disability was attributable to causes unrelated to the injury she sustained at work. The Board correctly found that the employer failed to rebut the presumption in 33 U.S.C.A. § 920(a) that the person claiming compensation comes within coverage of this chapter.
 
 
 16
 In view of the fact that Mrs. Greenwood is 61 years old, has a seventh grade education, has never done any work except the type of work requiring physical exertion, and since the employer did not show that any other type of work was available for Mrs. Greenwood, we find the Review Board was correct in granting compensation for permanent total disability. See Diamond M. Drilling Co. v. Marshall, 577 F.2d at 1005-1006.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Senior Judge of the United States Court of Claims, sitting by designation
 
 
 [1]
 This section reads in relevant part:
 Compensation for disability shall be paid to the employee as follows:
 (a) Permanent total disability: In case of total disability adjudged to be permanent 66 2/3 per centum of the average weekly wages shall be paid to the employee during the continuance of such total disability. Loss of both hands, or both arms, or both feet, or both legs or both eyes, or of any two thereof shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. In all other cases permanent total disability shall be determined in accordance with the facts.
 
 
 [2]
 33 U.S.C.A. § 921(b) reads:
 BENEFITS REVIEW BOARD; ESTABLISHMENT; MEMBERS; CHAIRMAN; QUORUM; VOTING; QUESTIONS REVIEWABLE; RECORD; CONCLUSIVENESS OF FINDINGS; STAY OF PAYMENTS; REMAND
 (b)(1) There is hereby established a Benefits Review Board which shall be composed of three members appointed by the Secretary from among individuals who are especially qualified to serve on such Board. The Secretary shall designate one of the members of the Board to serve as chairman.
 (2) For the purpose of carrying out its functions under this chapter, two members of the Board shall constitute a quorum and official action can be taken only on the affirmative vote of at least two members.
 (3) The Board shall be authorized to hear and determine appeals raising a substantial question of law or fact taken by any party in interest from decisions with respect to claims of employees under this chapter and the extensions thereof. The Board's orders shall be based upon the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the Board. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier.
 (4) The Board may, on its own motion or at the request of the Secretary, remand a case to the hearing examiner for further appropriate action. The consent of the parties in interest shall not be a prerequisite to a remand by the Board.
 
 
 [3]
 33 U.S.C.A. § 921(c) reads:
 COURT OF APPEALS; JURISDICTION; PERSONS ENTITLED TO REVIEW; PETITION; RECORD; DETERMINATION AND ENFORCEMENT; SERVICE OF PROCESS; STAY OF PAYMENTS
 (c) Any person adversely affected or aggrieved by a final order of the Board may obtain a review of that order in the United States court of appeals for the circuit in which the injury occurred, by filing in such court within sixty days following the issuance of such Board order a written petition praying that the order be modified or set aside. A copy of such petition shall be forthwith transmitted by the clerk of the court, to the Board, and to the other parties, and thereupon the Board shall file in the court the record in the proceedings as provided in section 2112 of Title 28. Upon such filing, the court shall have jurisdiction of the proceeding and shall have the power to give a decree affirming, modifying, or setting aside, in whole or in part, the order of the Board and enforcing same to the extent that such order is affirmed or modified. The orders, writs, and processes of the court in such proceedings may run, be served, and be returnable anywhere in the United States. The payment of the amounts required by an award shall not be stayed pending final decision in any such proceeding unless ordered by the court. No stay shall be issued unless irreparable injury would otherwise ensue to the employer or carrier. The order of the court allowing any stay shall contain a specific finding, based upon evidence submitted to the court and identified by reference thereto, that irreparable damage would result to the employer, and specifying the nature of the damage.
 
 
 [4]
 The record reflects that Mrs. Greenwood's age, disability and limited education render her unable to work. Mrs. Greenwood was born on December 4, 1917 and attended school to the seventh grade. She worked at Army & Air Force Exchange Service at Keesler Air Force Base since May, 1971 as a relief girl. This work required her to lift crates of lettuce, sacks of cabbages and other heavy objects. She was also required to wash pots and pans and to lift heavy trays and dishes. She characterized her duties as a relief girl as requiring a lot of bending, stooping and lifting
 Prior to working at the AAFES she worked at Mavar's Seafood Cannery packing and labeling shrimp which required her to lift heavy cases and work long hours each day. She began work at Mavar's during 1967 or 1968.
 Prior to working at Mavar's she sold Electrolux vacuum cleaners for about two years. This work also required her to lift heavy objects.
 Mrs. Greenwood's employment history shows the only type of work she has ever performed involved intense physical exertion which her disability prevents her from doing now. This, coupled with her limited education and her age, would make it impossible for her to acquire a different type of employment.