622 F.2d 110
 ODOM CONSTRUCTION COMPANY, INC., Employer, and American
Mutual Insurance Company, Carrier, Petitioners,
v.
UNITED STATES DEPARTMENT OF LABOR and Director, Office of
Workers' Compensation Programs, United States
Department of Labor, and Garfield Maze,
Jr., Respondents.
 No. 78-1483.
 United States Court of Appeals,
Fifth Circuit.
 July 21, 1980.
 
 Mouton, Roy, Carmouche, Bivins & Hill, John A. Bivins, Lafayette, La., for petitioners.
 John E. Conery, Franklin, La., for G. Maze, Jr.
 Ralph M. Hartman, Director Office of Workers' Compensation Programs, U. S. Dept. of Labor, Mary A. Sheehan, U. S. Dept. of Labor, Washington, D. C., for respondents.
 Petition for Review of an Order of the Benefits Review Board
 Before GODBOLD, GARZA and RANDALL, Circuit Judges.
 GODBOLD, Circuit Judge:
 
 
 1
 This is a petition by the employer and its insurer for review of a decision by the Benefits Review Board affirming an Administrative Law Judge's award to the respondent Maze of permanent disability benefits under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. ("LHWCA"). The petitioners raise three arguments: (1) Maze was not a covered "employee" within the meaning of 33 U.S.C. § 902(3);[1] (2) he was not injured on a situs covered under 33 U.S.C. § 903(a);[2] and (3) he was not permanently disabled as defined in 33 U.S.C. § 902(10).[3]
 
 I. Coverage under LHWCA
 
 2
 The facts underlying Odom's arguments that Maze was not a covered employee injured on a covered situs are largely undisputed. Maze, an employee of Odom, was accidentally injured on July 9, 1973 when an oxyacetylene torch, which he was using to cut wire rope, exploded and burned his forearms. Maze was normally a land-based construction worker. On the day of his injury he was engaged in a two-day job that required moving four large concrete blocks that had been located on the bank of a navigable canal[4] but had sunk into the water because of erosion. Earlier in the day of his injury Maze had been in the water digging under the blocks so that wire rope could be passed around them, but he was standing on shore when the torch exploded. The blocks were used solely as a place to tie off or moor barges that were waiting to be moved to the loading facilities of Domtar Salt Mine Company and barges that, after being loaded, were awaiting towboats.
 
 1. Maze's status under 33 U.S.C. § 902(3)
 
 3
 Odom argues that Maze is not a covered "employee" both because moving the concrete blocks was not maritime work and because the great majority of Maze's work for Odom was indisputably nonmaritime. We reject both arguments.
 
 
 4
 First, the act of moving the blocks is maritime work. Section 902(3) lists harborworkers among the types of workers covered. It is at least arguable that the repair of moorings, even of those not adjacent to main docks, is a type of job that could be performed by a typical harborworker. Yet we need not hold that Maze was engaged in "harborworking" at the time of his injury, for § 902(3) by its own terms states that longshoremen and harborworkers are not the only persons engaged in maritime employment. Cf. P. C. Pfeiffer Co. v. Ford, 444 U.S. 69, 77, 100 S.Ct. 328, 334, 62 L.Ed.2d 225, 233 n.7 (1979); Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 265 n.25, 97 S.Ct. 2348, 2358, 53 L.Ed.2d 320, 334 n.25 (1977) (maritime employment includes more than longshoring). Moving the blocks directly furthered maritime commerce. By tying up to the blocks, barges were moored and held in place before loading until they could be moved to the loading facilities and, after loading, until they could be taken away by tugs. Relocating the blocks after they had fallen or slipped into the water from erosion is not the type of job peripherally related to maritime matters that Congress said was not to be covered by the LHWCA, such as trans-shipment of stored cargo or clerical work. See S.Rep. No. 92-1125, 92d Cong., 2d Sess. 13; H.R.Rep. No. 92-1441, 92d Cong. 2d Sess. 10-11, quoted in P. C. Pfeiffer Co., supra, 444 U.S. at 79, 100 S.Ct. at 335, 62 L.Ed.2d at 234; Caputo, supra, 432 U.S. at 265 n.27, 97 S.Ct. at 2358, 53 L.Ed.2d at 334 n.27. On the facts before us, where the job being done clearly had "a realistically significant relationship to 'traditional maritime activity involving navigation and commerce on navigable waters' . . .," Weyerhauser Co. v. Gilmore, 528 F.2d 957, 961 (9th Cir. 1975), cert. denied, 429 U.S. 868, 97 S.Ct. 179, 50 L.Ed.2d 148 (1976) (citations omitted), Maze's work at the time of his injury was maritime.
 
 
 5
 The appellants urge that even if Maze was doing maritime work at the time of his injury, he is not a covered employee because he spent the great majority of his time doing indisputably land-based jobs. They assert that the 1972 amendments extended coverage only to workers who do primarily maritime employment. Arguably, our decision that Maze is a covered employee could be based solely upon the foregoing conclusion that he was engaged in maritime work at the time of his injury. See Thibodaux v. Atlantic Richfield Co., 580 F.2d 841, 843-45 (5th Cir. 1978), cert. denied, 442 U.S. 909, 99 S.Ct. 2820, 61 L.Ed.2d 274 (1979); 1A Benedict on Admiralty § 16a (1979); cf. Fusco v. Perini North River Assoc., 601 F.2d 659, 668 (2d Cir. 1979), vacated and remanded, 444 U.S. 1028, 100 S.Ct. 697, 62 L.Ed.2d 664 (1980) (claimant must have major activities on navigable waters). We need not rest on this narrow ground, however, but can look at all the circumstances of Maze's employment. Where, as here, the claimant was doing maritime work that required him to go into the water and where a significant part of the employer's overall work, 20%, was maritime, the policy of the Act strongly favors coverage.
 
 
 6
 A finding that Maze was not covered would create a major opportunity for abuse of the Act, a risk that is illustrated by the facts of this case. Mr. Odom testified in the hearing before the ALJ that, at the time of Maze's injury, approximately 20% of his company's work involved bulkheading and piledriving in navigable waters. He stated further that he had a separate crew for that type of work and in fact had separately incorporated those operations just before the hearing. If any member of this "maritime" group had been the claimant here, there would be no doubt about his status as a covered employee. Odom should not benefit from the fact that it has not elected to assign Maze, who was injured while engaged in clearly maritime activity, to some group or crew identified as carrying on maritime activity.
 
 
 7
 At least twice, in construing the maritime employment requirement of the Act, the Supreme Court has pointed out that coverage should not turn on the employers' assignment policies. In P. C. Pfeiffer Co., supra, the employer suggested that the Act reached only employees who, on the days of their injuries, could have been assigned to work on navigable waters. The Court stated that under such an interpretation an employer could impermissibly limit his liability under the Act simply by prohibiting some of his cargo-moving employees, who would otherwise have been covered, from working on navigable waters. 444 U.S. at 83, 100 S.Ct. at 337, 62 L.Ed.2d at 237. In Caputo, the employer urged that the Act covered only workers who handled cargo before it reached its first "point of rest" on land. The Court noted that such a construction would permit an employer to define the limits of his liability at his whim by moving the point of rest. 432 U.S. at 275 n.38, 97 S.Ct. at 2363, 53 L.Ed.2d at 340 n.38. In both cases the Court found that permitting coverage to turn on assignment policies was inconsistent with the professed Congressional desire for uniform coverage.
 
 
 8
 Denying recovery to Maze here would allow employers like Odom, who do substantial amounts of both maritime and nonmaritime work, to avoid liability under the Act to workers injured while engaged in maritime activity simply by allowing each employee to do only a limited amount of maritime work. Under the Supreme Court's analysis in Caputo and Pfeiffer, such a result would be contrary to Congressional intent.
 
 2. The situs under 33 U.S.C. § 903(a)
 
 9
 Appellants contend that Maze was not injured on a covered situs. They assert that the mooring blocks are not a "pier" or "wharf" and that their site, therefore, comes within the jurisdiction of the Act only if it is an "other adjoining area customarily used by an employer in loading, unloading, repair, or building a vessel." They interpret the phrase "customarily used by an employer . . ." to extend coverage only when the claimant's employer normally uses the facility for loading or unloading. They state that permitting coverage if the area is used for the listed purposes by any employer other than the claimant's would be inconsistent with the definition of employer given in 33 U.S.C. § 902(4).[5]
 
 
 10
 Odom's suggestion that coverage would be available only if it, the employer, used the mooring blocks is both an inappropriately strained reading of the statute and contrary to the overall Congressional intent. The stated limitation is cast in terms of an employer, not the employer or the claimant's employer. A more reasoned interpretation is that the site must be used by a statutory employer. It is clear from the record and the findings below that Domtar Salt, which uses the blocks as an integral part of its facilities for loading salt onto barges, is a statutory employer.
 
 
 11
 In addition, it seems clear to us that the phrase "customarily used by an employer . . ." was inserted to ensure that an employer could be liable only when it had real or constructive notice that an area was used for maritime purposes and was therefore likely to be a covered situs. This notice function would not be aided substantially by requiring the claimant's employer to be the customary user, as illustrated by the fact that Odom makes no claim here that it did not know about Domtar's use of this site.[6]
 
 
 12
 Moreover, the appellants' interpretation would open up a significant loophole in the LHWCA since there would be no coverage if the customary user of an area simply hired various independent contractors on a short-term basis to perform the necessary work. (The individual independent contractors presumably would not qualify as customary users.) This gap in coverage would be especially large if the limiting language applies to all shore-side sites. Such a result would be inconsistent with the professed Congressional intention for exclusive uniform coverage. Thus we accept the findings below that Maze was injured in a situs covered under 33 U.S.C. § 903(a).
 
 II. Disability
 
 13
 On the existence of total and permanent disability, we must uphold the Board's decision if it correctly concluded that the ALJ's decision is "supported by substantial evidence on the record as a whole and is in accordance with the law." Diamond M. Drilling Co. v. Marshall, 577 F.2d 1003, 1005 (5th Cir. 1978) (citations omitted); see Jacksonville Shipyards, Inc. v. Dugger, 587 F.2d 197, 198 (5th Cir. 1979); Army & Air Force Exchange Service v. Greenwood, 585 F.2d 791, 793 (5th Cir. 1978). All doubts are to be construed in favor of the employee in accordance with the remedial purposes of the Act. Id. at 794.
 
 
 14
 As noted above, the Act defines disability as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C. § 902(10). Although the Act does not provide a standard by which to determine degree of disability, we have held that this determination must be based not only on physical condition but also on other indicia such as age, education, employment history, rehabilitative potential, and the availability of work that the claimant can do. See Dugger, supra, 587 F.2d at 198; Greenwood, supra, 585 F.2d at 796; Diamond M. Drilling Co., supra, 577 F.2d at 1005-06. Thus, "an individual may be totally disabled for purposes of the Act when physically capable of performing certain work but otherwise unable to secure that particular kind of work." Id. at 1006.
 
 
 15
 It is undisputed that Maze was 54 years old at the time of his hearing four years ago and that he has a fourth grade education with no formal technical training. His work history involved various jobs, all of which required heavy use of the arms, wrists, and hands. After his accident Maze attempted to work as a cement finisher and a driver of heavy trucks. He stated that he was unable to do these jobs because of the injuries to his left hand even though he had done similar work in the past. Finally, Maze lives in a small town about 125 miles from New Orleans.
 
 
 16
 The primary issue regarding disability is whether there is substantial evidence that Maze is permanently injured. Maze's basic complaint is that his left or dominant hand has a very weak grip. Dr. Cromwell, who had treated Maze for a year, including the performance of surgery on his left wrist, testified that Maze's accident had caused him to have a very weak grip even though there was little objective evidence to show the existence of his injury. Appellants' experts testified that Maze showed no sign of permanent injury, and one expressed the opinion that the dynamometer test used by Dr. Cromwell and the other expert was invalid. In concluding that Maze did have an accident-related weak grip, the ALJ relied upon Dr. Cromwell's testimony because he had treated Maze over an extended period while appellants' experts had seen Maze only one time each. He also rejected the testimony that the dynamometer test was invalid. The ALJ's conclusions are supported by substantial evidence and must stand.
 
 
 17
 Appellants also urge that Maze is not totally disabled. Dr. Cromwell testified that Maze was unable to do heavy labor and could lift no more than 30 pounds. The ALJ found that after the accident Maze was unable to do two of the jobs that he had previously performed. Appellants point out, however, that Dr. Cromwell said that Maze could do light work, such as driving a light truck and lifting packages of up to 30 pounds and that Maze apparently had not tried to find such light work. The Board stated that because Odom did not contend that Maze could still do heavy construction work on a regular basis, Odom had the burden to show the availability of work that Maze could do, and since Odom had made no such showing concluded that Maze was totally disabled.
 
 
 18
 Although the Act does not define a claimant's burden for establishing the existence of a disability, most courts have held that a claimant has made out a prima facie case once he has shown that he can no longer perform his previous job because of a job-related injury. At that point the burden shifts to the employer to show the availability of other jobs that the claimant could perform. See McCabe v. Sun Shipbuilding & Dry Dock Co., 602 F.2d 59, 62 n.7 (3d Cir. 1979); Newport News Shipbuilding & Dry Dock Co. v. Director, Office of Workers' Compensation Programs, 592 F.2d 762, 764-65 (4th Cir. 1979); Perini Corp. v. Heyde, 306 F.Supp. 1321, 1325-29 (D.R.I.1969); see also American Stevedores, Inc. v. Salzano, 538 F.2d 933, 935-36 (2d Cir. 1976). But see Air America, Inc. v. Director, Office of Workers' Compensation Programs, 597 F.2d 773, 778-781 (1st Cir. 1979) (burden shifts only when "claimant's inability to work seems probable, in light of claimant's physical condition and other circumstances such as claimant's age, education, and work experience"). This two-step analysis is consistent with our decision in Base Billeting Fund, Laughlin Air Force Base v. Hernandez, 588 F.2d 173, 178 (5th Cir. 1979). See also Greenwood, supra.[7]
 
 
 19
 Our decision in Diamond M. Drilling Co. is not to the contrary. In that case the claimant had shown that he was unable to do any work whatsoever after his job-related injury. The court stated that under those circumstances the employer had the burden of showing available work. Notably, however, the court did not say that the burden shifted only after the claimant's showing of complete inability to work. We think, rather, that the claimant in Diamond M. simply carried more than the initial burden of proof required of him in this circuit.
 
 
 20
 Under the ALJ's findings of fact, which are supported by substantial evidence, Maze made out a prima facie case by showing inability to do his previous job because of a job-related injury. Odom has presented no evidence of available work that Maze could still perform. Thus the ALJ's conclusion, as affirmed by the Benefits Review Board, that Maze is totally and permanently disabled must stand.
 
 
 21
 The order of the Board must be affirmed.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 33 U.S.C. § 902(3) provides that:
 (t)he term 'employee' means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harborworker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.
 
 
 [2]
 33 U.S.C. § 903(a) provides in relevant part that:
 (c)ompensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, or building a vessel).
 
 
 [3]
 33 U.S.C. § 902(10) provides that:
 '(d)isability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment.
 
 
 [4]
 The canal was connected to the Intracoastal waterway system so that barges could be moved to various points in the United States
 
 
 [5]
 33 U.S.C. § 902(4) defines employer to mean:
 an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used in loading, unloading, repairing, or building a vessel).
 On appeal, Odom does not contend seriously that it is not a statutory employer. That argument, however, was raised and rejected by both the ALJ and Benefits Review Board.
 
 
 [6]
 Our analysis of the notice function would be essentially the same regardless of whether the customary use requirement applies only to "other areas," see Caputo, 432 U.S. at 278-280, 97 S.Ct. at 2365, 53 L.Ed.2d at 342-43 (reserving question but noting that such an interpretation is probably correct) or to all areas on shore. See Jacksonville Shipyards, Inc. v. Perdue, 539 F.2d 533, 541-43 (5th Cir. 1976), vacated in part and remanded, 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977), adhered to on remand, 575 F.2d 79 (5th Cir. 1978), aff'd on other grounds sub nom. P. C. Pfeiffer Co. v. Ford, supra. As a result, we do not need to define the exact parameters of that requirement
 
 
 [7]
 By analogy, in suits brought for disability benefits under the Federal Old-Age, Survivors, and Disability Insurance Benefits Act, 42 U.S.C. §§ 401-31, this court has consistently held that the burden to show employment available to a claimant shifted to the Secretary of Health, Education, and Welfare once the claimant showed that he was no longer able to do his previous job. See Knott v. Califano, 559 F.2d 279, 281 (5th Cir. 1977); DePaepe v. Richardson, 464 F.2d 92, 100-01 (5th Cir. 1972); 42 U.S.C. § 423