Tommie L. **FULKS**, Petitioner-Cross Respondent

v.

**AVONDALE SHIPYARDS, INC.,** Respondent-Cross Petitioner,

v.

**DIRECTOR, OFFICE of WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT of LABOR, Respondent.**

No. 79–1861.

United States Court of Appeals, Fifth Circuit.

Feb. 23, 1981.

Rehearing Denied March 24, 1981.

---

Hugh G. Oliver, Westwego, La., for petitioner-cross respondent.

Carin A. Clauss, Sol. of Labor, U. S. Dept. of Labor, Joshua T. Gillelan, II, Laurie M. Streeter, Associate Sol., Washington, D. C., for Director.

John O. Charrier, Jr., New Orleans, La., for Avondale Shipyards, Inc.

Before TJOFLAT, POLITZ and HATCH-ETT, Circuit Judges.

POLITZ, Circuit Judge:

We again consider the claim of Tommie L. Fulks for benefits under the Longshoremen's and Harbor Workers' Compensation Act (the Act), 33 U.S.C. §§ 901–950. Fulks seeks our review, as does his former employer, Avondale Shipyards, Inc. (Avondale), of the most recent decision by the Benefits Review Board (BRB). The BRB upheld an Administrative Law Judge's (ALJ) award of benefits to Fulks premised on a finding of permanent partial disability caused by the work-related aggravation of a pre-existing lung disease. We affirm.

*Context Facts*

Although the course of this litigation has been lengthy, the dispositive facts may be recited briefly. Fulks worked as a welder for Avondale from 1952 until 1968. In September 1966 he was hospitalized for a form of pulmonary tuberculosis called atypical mycobacteriosis, an .infection of the lungs caused by an organism known as the Battey bacillus Type III. The germ, generally believed to be endemic to the soil in rural areas of the southeastern United States, is capable of lying dormant in the lungs for extended periods. Respiratory infection can occur when the lung's biological defenses attenuate, activating these organisms.

After five months of treatment Fulks returned to work but suffered a relapse in July 1967. He again returned to work in March 1968 but a reactivation of the disease required termination of employment in August 1968. He has not worked since.

Fulks first suspected a causal link between his employment with Avondale and his condition as a consequence of separate conversations, during 1971, with Avondale's personnel manager and two physicians. A formal claim was filed with the deputy commissioner on October 12, 1971, and a copy was promptly transmitted to Avon-dale. The suspected causation was grounded on Fulks' exposure to airborne concentrations of silica particles caused by sandblasting operations.

In the first phase of the history of this litigation the ALJ held that Fulks had given Avondale timely notice and that the claim for benefits had been timely filed. Benefits were denied, however, for failure of coverage,[1] based on the ALJ's finding that there was no evidence that Fulks had been exposed to any disease-producing agents over navigable waters. In addition, the ALJ found no causal link between Fulks' condition and his exposure to silica and determined that the illness did not preclude Fulks' pursuit of meaningful employment. The BRB affirmed the finding of no coverage and did not reach the other issues. On appeal, in an unpublished opinion, we reversed and remanded "for an articulation of the basis upon which rejection of coverage was sustained," noting that there was uncontroverted evidence that Fulks had worked over navigable waters during two months in 1967. *Fulks v. Avondale Shipyards, Inc.*, 541 F.2d 279 (5th Cir. 1976). 5 BRBS 390, 391.

The second phase of the history began with the BRB's determination on remand that the coverage issue was governed by *McCabe v. Sun Shipbuilding & Dry Dock Co.*, 1 BRBS 509, 515, BRB No. 74–193 (June 4, 1975), *rev'd on other grounds*, 593 F.2d 234 (3d Cir. 1979), in which the BRB had stated:

> The amount of time spent over navigable waters during exposure to harmful stimuli causing or aggravating an occupational disease is unimportant and will not lend itself to apportionment between jurisdictions as long as the exposure over navigable waters was sufficient to have at least aggravated the condition.

The BRB in turn remanded to the ALJ for the taking of additional evidence and clarification of the ALJ's original holdings on the causal relationship between Fulks' dis-

---

1. The governing coverage provision found in the pre-1972 amended version of § 3(a) of the Act, 33 U.S.C. § 903(a), is limited to "disability or death result[ing] from an injury occurring upon the navigable waters of the United States (including any ... dry dock ...)."

ability and his work environment and on the nature and extent of disability. The ALJ reaffirmed his findings on the issues of timeliness of notice and claim. He rejected Fulks' claim that exposure to sandblasting was the originating cause of his atypical mycobacterial disease. However, there was medical evidence that the inhalation of silica crystals can destroy phagocytes, cells capable of defending against infection caused by the Battey bacillus. Accordingly, the ALJ found it reasonable to infer that Fulks' exposure to sandblasting while working upon navigable waters on two occasions in 1967, after being weakened by his prior bouts with the disease, was sufficient to bring his claim within the coverage of the Act. Finally, the ALJ found that Fulks' disability was permanent and partial.

Fulks appeals (1) the determination that his disease was not brought about by pre-1966 exposure to sandblasting, and (2) that his disability is only partial. Avondale challenges the award on grounds of lack of jurisdiction and causation, untimeliness of notice and claim, and lack of substantial evidence to support the finding of permanent, albeit partial, disability.

### Scope of Review

Under the statutory provisions it is the responsibility of the ALJ to make findings of fact and to determine the validity of a claim. An aggrieved party may appeal to the BRB for a review of the ALJ's decision. 33 U.S.C. § 921. The BRB does not make independent findings and its review is limited: "The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record considered as a whole." 33 U.S.C. § 921(b)(3).

■ Decisions of the BRB are subject to review by the appropriate circuit court. 33 U.S.C. § 921(c). Precedent firmly establishes that the Courts of Appeals examine BRB decisions for errors of law and to make certain that the BRB has adhered to its scope of review. We likewise follow a substantial evidence standard. *See Presley v. Tinsley Maintenance Service*, 529 F.2d 433

(5th Cir. 1976). *See also Base Billeting Fund, Etc. v. Hernandez*, 588 F.2d 173 (5th Cir. 1979); *Army & Air Force Exchange Service v. Greenwood*, 585 F.2d 791 (5th Cir. 1978); *Equitable Equip. Co., Inc. v. Hardy*, 558 F.2d 1192 (5th Cir. 1977); *Alabama Dry Dock & Shipbuilding Co. v. Kininess*, 554 F.2d 176 (5th Cir.), *cert. denied*, 434 U.S. 903, 98 S.Ct. 299, 54 L.Ed.2d 190 (1977). The significance of the following language from *Presley*, 529 F.2d at 436, becomes readily apparent in our present review of the substantive issues:

> [T]he findings of the administrative law judge must be accepted unless unsupported by substantial evidence in the record considered as a whole, *O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483, 487 (1951), or unless they are "irrational," *O'Keeffe v. Smith Associates*, 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895, 897 (1965). Moreover, if supported by the evidence and not inconsistent with the law, the administrative law judge's inference is conclusive. That the facts may permit diverse inferences is immaterial. The administrative law judge alone is charged with the duty of selecting the inference which seems most reasonable and his choice, if supported by the evidence, may not be disturbed. *Cardillo v. Liberty Mutual Insurance Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947).

Before resolving the issues presented by Fulks and Avondale which invoke inquiry into the existence of substantial evidence to support the ALJ's decision, we address the initial issue of coverage under the Act.

### Coverage

■ Avondale presses two independent yet related arguments. First, it maintains that due to the brevity of Fulks' exposure to sandblasting—two occasions in 1967—this court should apply a *de minimis* rule. The BRB noted our earlier expression of concern for the application of such a rule in this case and refused to inject a *de minimis* standard, citing *Travelers Insurance Company v. Cardillo*, 225 F.2d 137 (2d Cir.), *cert.*

*denied*, 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800 (1955), which embodies the seminal expression of the "last employer" rule. The court stated, *id.* at 145:

> [T]he employer during the last employment in which the claimant was exposed to injurious stimuli, prior to the date upon which the claimant became aware of the fact that he was suffering from an occupational disease arising naturally out of his employment, should be liable for the full amount of the award.

The BRB's conclusion as to coverage in this case is supported by the reasoning of *Cardillo* and is consistent with the apparent and inherent coverage of the Act. The ALJ inferred that the 1967 exposure to free silica crystals contributed to the relapse because of Fulks' weakened lungs. The BRB found this inference reasonable and stated: "We hold that substantial evidence supports this finding that claimant's condition was aggravated to some degree by his water-based exposure to free silica in 1967, and consequently that his claim is covered by the Act." We agree.

■ Avondale next challenges the jurisdiction of this court on the ground that Fulks is covered, if at all, by the Louisiana workmen's compensation statute and not by the Longshoremen's and Harbor Workers' Compensation Act. The rationale for this contention is that Fulks' last period of exposure to sandblasting was while he was working for Avondale onshore in Louisiana rather than over navigable waters. Contrary to the position advocated by Avondale, *Cardillo* does not support such a holding. The BRB correctly noted that "[*Cardillo*] is a rule of liability assessment, not of jurisdiction." Whether over water or on land, Avondale remains the proper defendant for purposes of assessing liability. Furthermore, the principle behind the "last employer" rule enunciated in *Cardillo* is indistinguishable from the non-apportionment rule set forth in *McCabe, supra*, in which the BRB upheld the ALJ's finding that even if the injurious stimuli were encountered during employment both on navigable waters and in an area not covered by the Act, the entire disability was nevertheless compensable. Fulks' claim is within the reach of the Act.

### Timeliness of Notice and Claim

Avondale's contentions that Fulks' claim should be barred for failure to assert it within one year of knowledge of the injury and for failure to notify Avondale of the claim are without merit. Two statutory provisions set forth the time limitations for giving notice of the illness to the deputy commissioner and the employer, and for filing a claim with the deputy commissioner. In their pre-amended form, § 12 of the Act, 33 U.S.C. § 912, provided that notice of an illness must be given within thirty days after the date of illness, and § 13 of the Act, 33 U.S.C. § 913, provided that a claim must be filed within one year after the illness. These limitations were interpreted to prescribe that the period "begins to run when the employee knows, or reasonably should know, that his condition is a disease which arose out of his employment." *Aerojet-General Shipyards, Inc. v. O'Keeffe*, 413 F.2d 793, 795 (5th Cir. 1969), *citing Travelers Insurance Company v. Cardillo, supra.* This standard was codified in the 1972 amendments to 33 U.S.C. §§ 912 and 913, and has been given retroactive application. *Cooper Stevedoring of La., Inc. v. Washington*, 556 F.2d 268 (5th Cir. 1977).

■ We are convinced by the abundance of evidence in the record that Fulks filed his application well within the one year statutory period. The ALJ was satisfied that although Fulks was fully aware from sometime in 1966 that he had a form of tuberculosis, it was not until 1971 that he had reason to suspect a causal link between this disease and the conditions at work. It was at that time that an examining physician directly confronted Fulks with the possibility of such a connection. The prior medical records from the Veteran's Administration Hospital detailing Fulks' medical background and treatment for atypical my-

cobacteriosis contain no reference whatsoever suggesting a causal connexity to Fulks' employment. It is reasonable to believe that if Fulks had any idea of the causal connection he would have made this known to the medical personnel then in attendance. He did not do so.

We similarly reject Avondale's contention that Fulks' claim should be barred because written notice of the injury was not given within thirty days after Fulks knew, or reasonably should have known, that his illness was work-related. 33 U.S.C. § 912(a–b). The present facts fall squarely within the statutory exception to the time limitation: failure to comply with the thirty-day notice provision will be excused if the employer had knowledge of the illness and the employer has not been prejudiced by the lack of written notice. 33 U.S.C. § 912(d). The exception aside, Avondale was put on notice when it received a copy of Fulks' formal claim from the deputy commissioner. This knowledge, coupled with the lack of any evidence of prejudice to Avondale, satisfies us that both the letter and spirit of the notice provision have been satisfied.

### Evidence Relative to Causation and Disability

Upon reviewing the record in light of the contentions of the parties, we conclude that the BRB did not err in affirming the award of benefits to Fulks. The evidence supporting the findings of a work-related aggravation of a pre-existing disease and consequential partial permanent disability is substantial. We note with particularity the ALJ's finding that in 1966 Fulks did not suffer from silicosis, an impairment of the lungs from exposure to silica crystals. Silicosis is generally considered to be a progressive condition. X-rays taken of Fulks over the years revealed no such progression. The absence of silicosis formed the basis for the finding that Fulks' resistance to the Battey bacillus germ was not lowered below

the effective threshold in 1966, and therefore the initial onset of atypical mycobacterial disease could not be attributed to the conditions in which he worked prior to September 1966. In a not unusual situation, the ALJ was confronted with conflicting medical testimony. After weighing this evidence, the ALJ credited certain testimony and drew permissible inferences, *see Todd Shipyards Corporation v. Donovan*, 300 F.2d 741 (5th Cir. 1962), which we find both rational and supported by substantial evidence. *See O'Keeffe v. Smith, Hinchman & Grylls Associates*, 380 U.S. 359, 362, 85 S.Ct. 1012, 1014, 13 L.Ed.2d 895 (1965).

Finally, we address the finding of permanent partial disability. Avondale apparently contends that if Fulks does not suffer from silicosis, any aggravation of a pre-existing condition can only be temporary. To the contrary, the ALJ inferred that the aggravation of Fulks' mycobacteriosis rendered him permanently susceptible to further relapses of lung infections. That Fulks could still perform certain types of work does not, without more, render this finding unreasonable. Again, the finding that upon recovering from a relapse Fulks' lungs would not return to their previous state is supported by substantial evidence. Likewise, the ALJ's finding that Fulks' disability is only partial and that Fulks is capable of employment of consequence is also supported by substantial evidence.

For these reasons we AFFIRM the decision and order of the Benefits Review Board.