The **CONTINENTAL INSURANCE COM-PANY, Plaintiff-Appellee,**

v.

George A. **BYRNE, Deputy Commissioner, Tenth Compensation District, Bureau of Employees' Compensation, United States Department of Labor, Defendant-Appellant.**

No. 71–1143.

United States Court of Appeals, Seventh Circuit.

Jan. 3, 1972.

Certiorari Denied May 15, 1972.

See 92 S.Ct. 1767.

James R. Thompson, U. S. Atty., Chicago, Ill., L. Patrick Gray, III, Asst. Atty. Gen., Barbara L. Herwig, Atty., Dept. of Justice, Washington, D. C., William J. Bauer, U. S. Atty., Walter H. Fleischer, Atty., Dept. of Justice, Washington, D. C., for appellee.

John W. Hough, Robert A. Creamer, Chicago, Ill., for plaintiff-appellee; Price, Cushman, Keck & Mahin, Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and CUMMINGS, Circuit Judge.

SWYGERT, Chief Judge.

This is an appeal from a judgment vacating an award of compensation under the Longshoremen's & Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. The claimant, a longshoreman working aboard the vessel Kostantis Yemelos, fell to the bottom of the Number 1 hold suffering substantial injuries. The Deputy Commissioner determined from the evidence presented at the hearing on the claim that the injury arose out of and in the course of the claimant's employment and awarded him compensation. Plaintiff, the insurance company whose policy protected the employer from such claims, sued in the district court to have the award of compensation set aside on the ground that the Deputy Commissioner's determination was not supported by substantial evidence. The district court granted summary judgment for the insurance company and vacated the award. We reverse.

The only issue presented on this appeal is whether the district court properly applied the substantial evidence rule in reviewing the determination of the Deputy Commissioner. The district court understood its role to be that defined by section 10(e) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(E), which requires a reviewing court to:

> hold unlawful and set aside agency action, findings, and conclusions found to be— . . . unsupported by substantial evidence. . . . In making [such determination], the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

As the Supreme Court said in O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951), "[The standard of judicial review] is sufficiently described by saying that the findings [of the Deputy Commissioner] are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole. . . ."

The record before the district court on this review was, in great measure, un-

contradicted testimonial evidence. The claimant, Frank Grayson, was a longshoreman of ten years' experience employed by Federal Marine Terminals, Inc. to work on the day of his injury in a crew consisting of himself and seven other men which was to unload the Number 2 cargo hold on the *M/V Kostantis Yemelos*. Grayson was hired for a crew at about 1:00 p. m., and he had been working the 'tween deck of the Number 2 hold for about two hours when he told his fellow crewmen that he had to go to the washroom. He stated at the hearing that the need to relieve himself was urgent. He testified that he did not remember what happened after that until he was discovered lying injured at the bottom of the Number 1 hold after the fall in which he suffered a fractured elbow, a dislocated wrist and a comminuted fracture of the femur. Upon being asked leading questions by the Deputy Commissioner (Grayson was not represented by counsel at the hearing, although the employer was), Grayson stated that he did remember starting to climb the ladder leading from the hold in which he was working to the deck above, although he remembered nothing beyond that point in time until after the fall. He could not recall if he had relieved himself before the fall.

The employer first called the foreman of Grayson's crew, Jerry Ross, to testify. He stated that on the day in question his crew was working in the Number 2 cargo hold. No one was working in the Number 1 cargo hold where Grayson was found. He further testified that the hatch cover over the Number 1 cargo hold was closed so that the hold was in complete darkness. There was no direct connection between the Number 1 and Number 2 cargo holds. To get from the Number 2 hold to the Number 1 hold necessitated climbing the ladder out of the Number 2 hold onto the main or upper deck, then walking approximately eight feet to the manhole and descending another ladder into the Number 1 hold. Ross examined the ship immediately following the accident. The ladder from the upper deck to the 'tween deck of each hold was approximately nine feet in height. The distance between the foot of the ladder on the 'tween deck and the opening through which Grayson fell to the lower deck was approximately eight or ten feet at the closest point. Ross also testified that the washroom was in the men's dressing room on the dock, so that Grayson would have to leave the ship to use that facility. Finally, Ross stated that he did not think it was possible to go down the ladder into the complete darkness of Number 1 cargo hold without noticing that the hatch cover overhead was closed.

The employer next called Dessie Bond, another foreman at Federal Marine Terminals, to testify. On the afternoon in question, he was working on deck at the Number 4 hatch when he was told that someone had fallen into the hold. He watched while a mate uncovered the hatch over the Number 1 cargo hold. He saw Grayson lying on the lower deck of that hold. No one was assigned to work in the Number 1 hold on that particular day. Bond was later present when the hatch cover over the Number 1 hold was closed. He went down the ladder onto the 'tween deck which he said was "completely dark." He further stated that it was not possible to go directly down the ladder from the main deck to the lower deck where Grayson was found. The opening to the lower deck was approximately six to ten feet from the base of the ladder on the 'tween deck. Finally, he stated that it was not possible to mistake the completely dark Number 1 hold for the sunlit Number 2 hold. Nor was it possible to fall from the ladder between the main and 'tween decks directly into the lower hold.

The employer then called Jerry Horton, a marine surveyor who took the measurements of the Number 1 and 2 cargo holds on the same afternoon Grayson fell. He stated that a masthouse is located between the manholes into the Number 1 and 2 holds and that the manholes were approximately six feet apart.

The ladder between the main and 'tween decks of the Number 1 hold measured sixteen feet. The distance between the foot of the ladder on the 'tween deck and the opening into the lower hold was approximately ten feet.

Horton testified that he was in the Number 1 hold when the hatch cover was closed. He observed "complete darkness." He did not think it possible to fall from the manhole ladder into the lower hold. He further stated that there was not a washroom "in that particular area," and that the washroom on the dock was some 150 to 200 yards from the ship. He observed that the cargo in the forward section of the lower hold had been torn open, fully exposed, and *possibly* pilfered. However, he did not observe any of the cargo on Grayson's person when he was removed from the lower hold. He also stated that there was no cargo near where Grayson landed when he fell. He testified that cargo had been "worked at some point" prior to the vessel's arrival at Chicago.

Alfred Hudson, the terminal manager for Federal Marine Terminals, testified that he first became aware of the accident at approximately 3:15 p. m. He arrived at the dock just as Grayson was brought ashore. He then inspected the Number 1 hold. He testified that it was impossible to fall down directly from the manhole of the Number 1 hold into the lower hold because the 'tween deck adjoined the area surrounding the base of the ladder. Hudson was in the 'tween deck when the hatch cover over the Number 1 hold was replaced. He observed "total darkness." He also went down into the Number 2 hold where he observed daylight when he looked down into the manhole. He stated that although Number 1 and 2 manholes had similar exteriors, upon entry into each manhole a difference was immediately apparent since the Number 1 hold was completely dark while the Number 2 hold was light. He also testified that the washroom facilities used by most of the men were located adjacent to their locker room facilities, although in an emergency shipboard facilities could be used. However, the men were not shown where these emergency washrooms were located.

The final witness for the employer was William Forrester, a photographer. He authenticated a number of photographs of the vessel which were admitted into evidence.

■ The Deputy Commissioner determined from the foregoing record that Grayson's injury was compensable under the Longshoremen's & Harbor Workers' Compensation Act as having arisen "out of and in the course of employment," since, as he specifically found, "The employee had left his worksite aboard the vessel to look for a washroom when the injury occurred." Our inquiry must be directed to whether the record affords a substantial evidentiary basis for that determination.

■ We begin with the proposition that where there is a doubtful factual question as to whether an injury arises out of employment, the law presumes compensability. Section 20(a) of the Act, 33 U.S.C. § 920(a), provides:

> In any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of *substantial* evidence to the contrary—(a) That the claim comes within the provisions of this chapter. (Emphasis added).

In Del Vecchio v. Bowers, 296 U.S. 280, 56 S.Ct. 190, 80 L.Ed. 229 (1935), the Supreme Court considered the effect of the similar presumption of 33 U.S.C. § 920(d) that death was not suicide. The Court stated that to defeat a claim, "The employer must rebut [the presumption of coverage] *prima facies.*" *Id.* at 286, 56 S.Ct. at 193. The Court further observed that if the evidence permitted an inference to be drawn either in favor of compensation or against it, "[T]he Deputy Commissioner and he alone is empowered to draw the inference; his decision as to the weight of the evidence may not be disturbed by the court." *Id.* at 287, 56 S.Ct. at 193.

The Government urges, on behalf of the Deputy Commissioner, that the employer did not present a prima facie case to the Deputy Commissioner sufficient to justify a determination adverse to the claimant. Therefore, the argument proceeds, if the Deputy Commissioner had determined the claim in the opposite fashion on this record, we would be compelled by the presumption of section 920(a) to reverse in favor of the claimant as the District of Columbia Circuit did in Wheatley v. Adler, 132 U.S.App. D.C. 177, 407 F.2d 307 (1968). *Wheatley* was a case in which a covered employee suffered heart failure due to pre-existing, but undiscovered arteriosclerotic heart disease. He died as he returned from answering a call of nature in an outside yard at his place of employment in 40-degree weather. There was no evidence that employment-related physical exertion or emotional stress other than urinating in the cold had precipitated the heart failure. The Court of Appeals reversed the Deputy Commissioner's rejection of the claim for compensation on the ground that the record did not "contain substantial evidence to dispel the statutory presumption." *Id.* at 314.

However, we need not determine the result of the Government's hypothetical case of a rejected claim on this record. We are convinced that, at best, the employer's evidence was insufficient to preclude the Deputy Commissioner's determination that the injury was compensable. The only defense attempted by the employer was the introduction of evidence obviously intended to produce the inference that Grayson had deviated from the course of his employment and suffered injury while pilfering cargo. The evidence in that regard was so weak that, in fact, there was no evidence that pilfering had occurred in the port of Chicago. In any event, the Deputy Commissioner determined, "The injury arose out of and in the course of employment. The employee had left his worksite aboard the vessel to look for a washroom when the injury occurred."

That conclusion was obviously based upon Grayson's testimony that he left his worksite to answer an urgent call of nature and on a determination that the employer's evidence did not warrant a finding that Grayson had deviated from his employment.

 Bearing in mind that judicial review of such determinations by the Deputy Commissioner is limited by the presumption of 33 U.S.C. § 920(a), O'Keeffe v. Smith, Hinchman & Grylls Assoc., 380 U.S. 359, 361, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965), we hold that the Deputy Commissioner's determination was neither "irrational" nor "unsupported by substantial evidence on the record . . . as a whole." *Id.* at 362, 85 S.Ct. at 1014.

The judgment of the district court is reversed and the cause is remanded for further proceedings consistent herewith.