**Dale R. RIZZI, Petitioner,**

v.

**UNDERWATER CONSTRUCTION CORPORATION, et al.,**
**Respondents.**

No. 95–3034.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1996.

Decided May 21, 1996.

David A. Kelly (argued and briefed), Montstream & May, Glastonbury, CT, for Rizzi.

Scott Wilson Williams (argued and briefed), Maher & Williams, Fairfield, CT, for Underwater Const. Corp., Liberty Mut. Ins. Co.

Michael S. Hertzig, U.S. Dept. of Labor, Office of the Sol., Washington, DC, for Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor.

Before: MERRITT, Chief Judge; CONTIE and BOGGS, Circuit Judges.

MERRITT, Chief Judge.

This case raises the question whether a reservoir fed by a navigable waterway is itself part of the waterway under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901–950. Claimant, Mr. Rizzi, appeals the Benefits Review Board's reversal of the Administrative Law Judge's grant of benefits under the Act. He is an underwater diver who was on assignment in Ohio as an employee of the Underwater Construction Corporation. While in Ohio working at the Champion Paper Factory, Mr. Rizzi was severely injured on the job. He suffered a stroke which his doctors attributed to his diving.

The Administrative Law Judge granted benefits under the Act, holding that the reservoir or tank in which the defendant was working, which was located underneath the Champion Factory adjacent to the Great Miami River, was a navigable waterway so as to fulfill the jurisdictional requirement of the Act that the injury occur on a navigable waterway. The Administrative Law Judge also held that the claimant's work was maritime employment.

The ALJ held alternatively that even if the reservoir under the Champion Paper Factory did not qualify as navigable, the claimant could still be found to be a maritime employee within the so-called "twilight zone" between coverage under the Act for injuries or deaths upon the navigable waters of the United States (or an adjoining area) and the states' concurrent jurisdiction over land-based injuries.

The Benefits Review Board reversed the ALJ, and held that claimant's injury did not occur on a navigable waterway. Mr. Rizzi appeals from that reversal. We affirm the Benefits Review Board.

## FACTS

Mr. Dale Rizzi, 33, is a Navy trained SCUBA diver who, upon his honorable discharge from the Navy in September 1986, was hired as a diver for the Underwater Construction Corporation located in Essex, Connecticut. The employer specializes in construction and repair of power plants, marinas, and other facilities located on the water, which require underwater access and the services of underwater divers. The claimant first worked in Connecticut, building steel drums in channels that ran underneath a power plant situated on the banks of a river. He was then assigned to work in Hamilton, Ohio at a Champion International plant which manufactured paper.

The Champion Plant was located on the banks of the Great Miami River, and water from the Great Miami was used in the paper making process. There was a 100' × 100' × 15' reservoir or tank underneath the plant which was used in the paper making process. Water flowed into this reservoir through underwater intake and outtake pipes from the Great Miami River. The claimant's job was to dive underwater and clear the silt and other debris which accumulated in the tank or reservoir using a cast iron pump. He spent an average of four hours a day in the water, and when not in the water, he monitored the other diver.

On the morning of the injury, the claimant began work at 7:30 a.m. Shortly after that, he developed a headache. He suspected carbon monoxide poisoning, but a check of his air supply revealed no problems. The headache worsened and he started to climb up the ladder to get out of the water but started to regurgitate while still wearing his air tight helmet, causing himself to inhale his own vomit.

He was transported to the hospital where he remained until May 1987. He was diagnosed with having suffered a stroke, caused by his work as a diver.

## ANALYSIS

### Navigable Waterway

The Benefits Review Board must affirm the findings of fact and conclusions of

law of the Administrative Law Judge which are rational, supported by substantial evidence, and in accordance with law. *O'Keeffe v. Smith, Hinchman & Grylls Associates, Inc.*, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965); 33 U.S.C. § 921(b)(3). In order to establish that he is entitled to benefits under the Act, the claimant must establish that he was injured while in a place covered by the Act, and while in maritime employment as defined in the Act. *Williams v. Director, Office of Workers Compensation Programs*, 825 F.2d 246 (9th Cir.1987). To meet this so-called "situs" test, claimant could have shown either (1) that the tank or reservoir that he was in at the time of his injury was a navigable waterway of the United States, or (2) that the tank or reservoir adjoined a navigable waterway and that the tank or reservoir was used for loading, unloading, repairing, or building a vessel. *Williams, supra;* 33 U.S.C. § 903(a).[1]

■ A threshold requirement of navigability under the cases is the presence of an "interstate nexus" in order for a body of water to function as a continuous highway for commerce between ports. *Lepore v. Petro Concrete Structures, Inc.*, 23 BRBS 403 (1990) (citing *The Montello*, 78 U.S. (11 Wall.) 411, 20 L.Ed. 191 (1871)). In addition, the waterway must be capable of floating logs, boats and rafts. *Ne–Bo–Shone Ass'n, Inc. v. Hogarth*, 7 F.Supp. 885 (W.D.Mich. 1934), *aff'd* 81 F.2d 70 (6th Cir.1936).

■ The Administrative Law Judge correctly found that the Great Miami River, on which the paper plant in this case was located, was a navigable waterway. He went on to find that

> ... although Claimant was not directly in the Great Miami River, he was within a channel of water which flowed from the Great Miami River through this Champion International reservoir underneath its factory and then back into the [Great Miami River]. Waters running through diversion

tunnels have long been held to be still navigable waterways for purposes of the Longshore and Harbor Workers' Act. *See Morrison–Knudsen Company v. O'Leary*, 288 F.2d 542 (9th Cir.1961) (an artificial tunnel used solely to divert the Snake River during construction of a dam was held to be navigable waters). Waterways which involved diversion from river channels into factories and back to the main river have also been considered navigable waterways under the Act. *See C.J. Montag and Sons, Inc. v. O'Leary*, 304 F.Supp. 188 (D.C.Or. 1969) (A "tailrace" or "stream" formed by water returning to the Willamette River after it had been diverted for use in the manufacturing plant was held to be a navigable river).

J.A. at 24.

The Board rejected the ALJ's reliance on the *Morrison–Knudsen* and *C.J. Montag and Sons* cases, noting that both cases involved the navigability of artificial waterways that could be navigated by boats or barges. In *Morrison–Knudsen Co. v. O'Leary*, 288 F.2d 542 (9th Cir.1961), four workers were killed in a diversion tunnel of the Snake River. The court held that the water in the tunnel, constructed to carry the main stream of the river during construction of the dam, remained a navigable waterway that could float boats or barges. In *C.J. Montag and Sons, Inc.*, 304 F.Supp. 188 (D.Or.1969), a worker was killed in the tailrace of the Willamette River, which was a stream formed by water returning to the river after it had been diverted to two manufacturing plants. The court in that case held that the tailrace was navigable by barges up to 130 feet long and 28 feet wide operated in the tailrace.

The Board also based its reversal of the ALJ's decision on *Lepore v. Petro Concrete Structures, Inc.*, 23 BRBS 403 (1990). That case involved a claimant who was injured in a pontoon boat in a flume while removing a temporary support structure from below the

---

**1.** Section 903(a) provides:

Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).

concrete base laid for the construction of the Winter Garden building of the World Financial Center at Battery Park in New York City. The flume was a 60' × 30' channel with landfill on the bottom, a concrete slab on top, earth at one end and seawall at the other end. The water in the flume was 20' to 25' deep, and it seeped in through the gravel and rock base. In *Lepore,* the Board held that since water seeped into the flume solely for the purpose of facilitating heating and cooling, and not for navigation, it was not a navigable waterway since it could not support commerce. *Lepore* at 406.

■ According to the Board, the facts of Mr. Rizzi's claim are similar to those in *Lepore.* As in *Lepore,* the area which held water where the injury occurred was intended primarily for storage of the water for the heating and cooling system. Just as in *Lepore,* the reservoir or tank at issue in this case was tantamount to being land-locked since no vessel could gain access to it due to the walls surrounding it. We agree with the Board that a navigable waterway ends where underground pipes and vents remove water from a river to a reservoir or tank for manufacturing or storage purposes. Otherwise, river water pumped into municipal reservoirs and similar facilities would continue to be viewed as navigable waters even though transportation is no longer possible. Like drains and small creeks, such reservoirs are too far removed from navigation to be any longer considered "navigable waterways," even under a liberal construction.

■ The claimant argues that the decision of the Benefits Review Board inappropriately substituted its own factual findings for those made by the Administrative Law Judge, but we conclude that the Benefits Review Board's decision was not premised upon the substitution of factual findings made by the ALJ, but rather was premised upon the fact finder's misapplication of the law to the facts. The Board's reversal of the ALJ's decision and order rests upon its finding that the site of the claimant's injury did not constitute navigable waters as covered by 33 U.S.C. § 903(a). There was no retrial of facts by the Board, nor was there any substitution of

facts for the finding of the Administrative Law Judge.

**Maritime Employee**

■ In addition to establishing injury on actual navigable waters, a claimant may also establish coverage if his injury occurs in a landward area covered by Section 3(a) and his work is maritime in nature, bringing him within the definition of maritime employee in Section 2(3). See 33 U.S.C. §§ 902(3), 903(a). Section 3(a) provides that the injury must occur on the navigable waters of the United States "including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel." 33 U.S.C § 903(a).

In its decision reversing the ALJ, the Board stated:

... in addition to not constituting "navigable waters," the site at the paper factory where claimant was injured is not one of the enumerated sites in Section 3(a), and there is no contention that it is an adjoining area used for the maritime activity of loading, unloading, building, dismantling or repairing vessels. Therefore, we hold that claimant's injury did not occur on a situs covered under Section 3(a) of the Act.... Accordingly, as the situs requirement is not satisfied in this case, we reverse the administrative law judge's finding that claimant's injury on January 20, 1987 is covered under the Act and the resultant award of benefits.

J.A. at 46.

We agree that the claimant's injuries did not occur upon a navigable waterway, pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling or building a vessel as specified in 33 U.S.C § 903(a). The Board was therefore correct in finding as a matter of law that the claimant's injuries failed to meet the jurisdictional requirements of the Act.

**Twilight Zone**

■ Mr. Rizzi also argued that his injury occurred in the "twilight zone" between state

workers' compensation and the federal Act. He claimed that where an injured claimant is not eligible for state compensation benefits, he may be afforded LHWCA coverage despite not meeting all of the technical requirements under the Act. *See Hetzel v. Bethlehem Steel Corp.,* 50 F.3d 360 (5th Cir.1995).

The Board did not address the claimant's "twilight zone" argument, except in a footnote stating: "[i]n its brief to the Board, employer states that claimant received an award of benefits under Connecticut workers' compensation law, which employer ultimately did not challenge." J.A. at 46. Because the petitioner qualified for and secured workers' compensation benefits under the Connecticut Workers' Compensation Act, and because the petitioner has failed to meet the situs requirement for longshore jurisdiction, there is no justification for extending the Act's jurisdiction beyond that mandated by the statute.

### CONCLUSION

For the reasons discussed above, the Board was correct in reversing the judgment of the Administrative Law Judge awarding benefits to Mr. Rizzi under the Longshore and Harbor Workers' Compensation Act. We therefore AFFIRM.